MARY A. HALEY & others *vs.* BOSTON BELTING COMPANY
and others.

Suffolk. Nov. 20, 1884. — Sept. 3, 1885. FIELD & COLBURN, JJ., absent.

The owner of a building executed a lease of it, under seal, for a term of years, to T., who was the general agent and treasurer of a corporation, which was not named or referred to in the lease, and which had authorized T. " to hire and pay for all necessary stores and warehouses." T. took the lease with the intention that the building should be occupied by the corporation, and his agency and purpose were known to the lessor. The corporation did not do business in the name of T. and use that name as describing itself in the lease. The corporation occupied the demised premises, and paid rent therefor on bills rendered to it by the lessor. T. underlet a portion of the building, for which

the sub-tenants paid rent to the corporation. T. had almost the entire manage-
ment of the affairs of the corporation, and mingled his own accounts and cash
with those of the corporation. T. became bankrupt, and his assignees in bank-
ruptcy elected not to assume the lease. *Held*, that the lessor could not maintain
a bill in equity to charge the corporation on the covenants of the lease; that
the rent due from the sub-lessees at the time of T.'s bankruptcy belonged to
his assignees; and that the lessor was entitled to a decree for the rent accruing
subsequently to T.'s bankruptcy.

BILL IN EQUITY, by the executors of the will of Charles L.
Haley, against the Boston Belting Company, John G. Tappan,
the assignees in bankruptcy of said Tappan, Elisha S. Converse,
the treasurer of the Boston Belting Company, William H. Fur-
ber, its manager and clerk, William Lowry, and Edward F.
Lowry.

The bill alleged that, on December 8, 1871, Haley leased to
Tappan, for the term of ten years from January 1, 1872, a cer-
tain building in Boston; and it sought to hold the corpora-
tion liable as an equitable assignee of the lease. The bill also
sought from Converse and Furber discovery of the records of
the Boston Belting Company; and from the two last-named
defendants, who were sub-tenants of parts of the building, pay-
ment of the amounts due from them as rent.

The case was heard by *Colburn*, J., on the pleadings and the
report of a master, and reserved for the consideration of the full
court. The facts appear in the opinion.

*R. Olney & F. I. Amory*, for the plaintiffs.

*E. Avery*, for the Boston Belting Company.

W. ALLEN, J. Haley, in 1871, executed a lease of a building
in Boston for ten years to John G. Tappan, who was then the
general agent and treasurer of the Boston Belting Company,
with authority to hire buildings for it. Tappan took the lease
with the intention that the building should be occupied by the
Boston Belting Company, and his agency and purpose were
known to the lessor. The plaintiff seeks in this bill to charge
the Boston Belting Company on the covenants of the lease, on
the ground that it was the real or beneficial lessee, under obli-
gation, which can be enforced either at law or in equity, to per-
form the covenants of the lease.

The Boston Belting Company clearly is not liable at law.
The lease is under seal, and the company is not named or

referred to in it. *Seaver* v. *Coburn*, 10 Cush. 324. *Barlow* v. *Lee Congregational Society*, 8 Allen, 460. *Schaefer* v. *Henkel*, 75 N. Y. 378. It is not shown that the company did business in the name of Tappan and used that name as describing itself in the lease. The plaintiffs argue that the lease was procured by the company, and taken for its benefit; that the company entered under it; and that it is therefore bound by its provisions, either as having authorized its execution in the name of Tappan, or by force of a resulting or constructive trust in Tappan. See *Wright* v. *Pitt*, L. R. 12 Eq. 408; *Van Schaick* v. *Third Avenue Railroad*, 38 N. Y. 346; *Lees* v. *Nuttall*, 1 Russ. & Myl. 53.

Tappan's authority was "to hire and pay for all necessary stores and warehouses." He had no special authority or duty in regard to the leased premises, and there was no act of the company respecting the lease, except so far as his acts were those of the company. That he took a lease to himself with the intention that the company should occupy the premises, shows that he intended that it should occupy under him, and not as the lessee in the lease. There is no evidence that, when the lease was executed, either party, the lessor, the lessee, or the Belting Company, understood that the company was to occupy as the lessee under the lease; on the contrary, the inference is that the lease was made to Tappan in order that the company might occupy under him, and not as lessee.

There is no evidence that the company entered as lessee, or occupied otherwise than under Tappan. The subsequent conduct of the parties, such as the payment of rent by the company in bills rendered to it by the lessor, and the subletting by Tappan and payment by sub-tenants to the company are material only as they may tend to characterize the original transaction. They are not inconsistent with holding Tappan to be the lessee under the lease, especially in view of the evidence that he had almost the entire management of the affairs of the company, and mingled his accounts and cash with those of the company. Certainly there is nothing in the subsequent conduct of the parties which can control the terms of the lease, or show that the company is bound by the covenants.

As Tappan became a bankrupt, and his assignees elected not to assume the lease, the rent due from the sub-lessees at the time of the bankruptcy belongs to his assignees in bankruptcy; that which has accrued subsequently can be reached in equity by the lessor ; and the plaintiffs are entitled to a decree that it be paid to them.　1 Story Eq. Jur. § 687.　1 Fonbl. Eq. *c.* 5, § 5, and *c.* 3, § 3.　*Goddard* v. *Keate*, 1 Vern. 87.

The bill should be dismissed as to the Boston Belting Company, Converse, and Furber.　　　　　　　　　*Decree accordingly.*