BADGER SILVER MIN. CO. v. DRAKE.

(Circuit Court of Appeals, Fifth Circuit.  April 12, 1898.)

No. 633.

1. VENDOR AND PURCHASER—CONSTRUCTION OF LAND CONTRACT.
   A contract under seal, by which one party agrees to sell and another agrees to buy certain lands and other property, which provides for delivery of the property and payment therefor, and the deposit of deeds in escrow for delivery upon completion of the payments, is a contract of sale, and not a contract for sale.

2. PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL.
   Plaintiff's assignor, by contract under seal, sold land to an agent, who contracted in his own name without disclosing his principal. *Held* that, on default of payments, the plaintiff had no right of action against the principal afterwards discovered.

In Error to the Circuit Court of the United States for the Southern District of Florida.

This action was brought by the plaintiff in error against A. M. Drake and Levy Mayer in the circuit court of Suwannee county, Fla., and removed to the federal court, no service being had upon Mayer.

The action was brought upon the following contract:

This agreement, made at Milwaukee, in the state of Wisconsin, this 13th day of January, 1891, by and between the Badger Silver Mining Company, of Gillies, Ontario, a corporation, organized under the laws of Wisconsin, party of the first part, and Herbert N. Nichols, of Denver, Col., party of the second part, witnesseth:

First. Said first party hereby agrees to sell, transfer, assign, convey, and deliver unto said second party all the property, of every kind, character, and description, of said first party, real, personal, and mixed, wheresoever situate, whether enumerated herein or not. Said property embraces, among other things, the following: That part of mining location known as 200 T, commencing at the northeast corner of said 200 T; thence, running south, along the east line of said 200 T, 12 chains 98 links, more or less, to a point; thence west 80 chains 8 links, more or less, to the west boundary of said

200 T: thence north twelve chains 98 links, more or less, to the northwest corner of said 200 T; thence east, along the north line of said 200 T, 80 chains 13 links, more or less, to the point of beginning,—containing one hundred and four acres, more or less, comprising all the land in said 200 T deeded to the said first party by John M. Stowell. Also the mining location known as 201 T and 96 T, the said 201 T and 96 T, together with the said land in said 200 T, embracing 360 acres, more or less, all of said location being in the township of Gillies, district of Thunder Bay, province of Ontario, Canada. Also all mills, buildings, improvements, fixtures, machinery, tools, implements, and supplies in, upon, or about said mining locations, or used in connection with the working and operation of the same. Also all ores of every description, wherever the same may be. Also all books, maps, plans, papers, and documents, now in use or heretofore used in connection with the working of said mining location or the business connected therewith or otherwise. Said first party hereby covenants and agrees that it has a good. clear, free, absolute. and uninterrupted right to sell, transfer, assign, convey, and deliver all of the foregoing property, and every part thereof; that it has an absolute and indefeasible title in fee simple to all of said real estate, and that it is the absolute owner of all said personal property; that all of said property, real, personal, and mixed, and wheresoever situate. is free and clear from all mortgages, charges, incumbrances, liens, claims, taxes, and assessments whatsoever, except as hereinafter stated; and that it will forever warrant and defend the title to said property, and every part thereof. against any and all person or persons, corporation and corporations, whatsoever. Absolute and uninterrupted possession of all the said property in manner and form as aforesaid shall be delivered to said second party on or before February 10th, 1891, and none of said property of any kind shall be removed or disposed of in any way by said first party, its agents or employés, on and after the date hereof. It is the intent of this agreement that though absolute possession may not be delivered until on or before February 10th, 1891, the same shall take effect on, and relate back to, the date hereof. It is understood that the said first party, for purposes of convenience, has held and holds the title to said mining location 96 T, otherwise known as the "Porcupine Mine," in the name of John M. Stowell, as trustee, the president of said first party, and that the mining location last aforesaid is subject to an incumbrance of about $13,000.00. It is covenanted and agreed by said first party that, contemporaneously with the making of the payment of the sum of $24,000.00 hereinafter referred to, the said amount or so much thereof as is necessary shall be immediately applied towards the complete release and payment of said incumbrance, and that contemporaneously therewith the said Stowell shall execute and deliver to the escrow hereinafter mentioned a good and sufficient warranty deed running to the said second party or his assigns, and containing covenants of warranty on the part of said Stowell against any and all acts and omissions on his part, and containing also full covenants of warranty on the part of the said first party. The deed last aforesaid shall at once be joined in by the wife of the said Stowell, releasing all her dower and homestead rights, if any, therein. The said deed, immediately upon its execution, shall be delivered in escrow to the American Trust & Savings Bank, of Chicago, Ill., by said bank to be held until all of the payments hereinafter referred to have been made in manner as hereinafter set forth, on the making of which the said deed shall be delivered by said bank to said second party or his assigns. Contemporaneously with the execution and delivery of this contract, the said first party shall execute and deliver to said escrow full and complete and absolute instruments of transfer and conveyance, containing full covenants of warranty, and conveying to said second party or his assigns all of the property hereinbefore specified. Said instruments of transfer and conveyance shall be held by said escrow until all the payments hereinafter referred to have been made in manner as hereinafter set forth. and. immediately upon the making of the same, shall be delivered to said second party or his assigns.

Second. Said second party hereby agrees to and does purchase all of the foregoing property, and agrees to and shall pay therefor the sum of two hundred and fifty thousand dollars ($250,000) in manner following: $1,000 in cash upon

the date of the execution of this agreement, the receipt of which by said first party is hereby acknowledged; $24,000.00 in cash on or before February 10th, 1891; $25,000 in cash on or before May 1st, 1891, with interest thereon from the date hereof at the rate of 6 per cent. per annum; $25,000 shall be paid into said bank as escrow on or before Sept. 1st, 1891, with interest thereon from the date hereof at the rate of 6 per cent. per annum; $50,000 shall be paid into said bank as escrow on or before December 1st, 1891, with interest thereon from the date hereof at the rate of 6 per cent. per annum; $50,000 shall be paid into said bank as escrow on or before March 1st, 1892, with interest thereon from the date hereof at the rate of 6 per cent. per annum; $75,000 shall be paid into said bank as escrow on or before July 1st, 1892, with interest thereon from the date hereof at the rate of 6 per cent. per annum. If the titles to the said property or any part thereof shall upon examination by the solicitors of said party of the second part be found to be other than as hereinbefore covenanted, then, upon notice of said fact to said escrow, the said moneys so to be deposited with the said escrow as aforesaid shall not be paid over to said first party until the defects in said title, if any, shall have been satisfactorily cured, or the value of said defects adjusted and paid or abated to said second party or his assigns; and thereafter, or in the event of the titles to said property being as herein covenanted, the said payments shall, after they have been made to said bank as escrow as aforesaid, and provided said first party shall not be in default in any way in the premises, be paid to the said first party by said bank, and contemporaneously therewith the said deeds so as aforesaid to be held in escrow by said bank shall be delivered to said second party or his assigns. If the said titles shall be found satisfactory by said solicitors, as herein provided, before the time for the making of said last payment to said escrow, then and in that event the said escrow shall turn over such payments theretofore made or thereafter to be made to it under this contract to said first party, provided said first party shall not be then in any way in default in the premises. It is further covenanted and agreed that if it becomes necessary to take any proceedings to cure any defects, if any, in any of the titles to the property aforesaid, that such proceedings shall be taken at the sole expense of said first party, and said second party, his heirs, legal representatives, and assigns, shall, if necessary, join in or allow such proceedings, and do whatever is necessary to effect the same, provided said second party is satisfactorily secured and indemnified in the premises.

Third. It is covenanted and agreed that, until the full payment is made of all said deferred payments, sixty per cent. of the net receipts for ores hereafter mined and sold before the making of said final payments as aforesaid shall be applied towards the said deferred payments. The said ores, prior to the making of said final payment as aforesaid, shall be shipped to Balbach & Sons, Newark, New Jersey, or any other responsible and reliable smelter to be selected by said first party, provided said Balbach & Sons or said other smelter shall do the smeltering as cheap as any other equally responsible or reliable smelter. Said first party is hereby given the right, at its own sole cost and expense, to place a man at said mining locations until all of said deferred payments have been made as hereinbefore specified; and such man shall have the right to ascertain the amount of all said net receipts as aforesaid, but he shall have no right of any kind in any way to interfere with the working of said mining locations, or the conduct, control, or management of the business therewith connected.

Fourth. If said second party shall make default in any of the payments specified in paragraph second of this contract, and shall continue in default for thirty days, then and in that event said first party, if said first party shall not then be in default in the premises, shall have the right to forfeit all payments heretofore made in the premises, and to become reinvested with the title to all of said property, with the same effect as though this instrument had not been made; but the second party shall not be entitled to withhold payment of the first $50,000 of said purchase price on account of any defect of title to said mining locations known as 200 T and 201 T.

Fifth. Said first party further covenants and agrees that it will properly execute and deliver, and cause to be properly executed and delivered, prompt-

ly, upon demand, any and all instruments of transfer and conveyance which may from time to time be required by said second party in the premises, for the purpose of fully and completely carrying out both the spirit and letter of this instrument; said instrument of transfer and conveyance to contain full and complete covenants of warranty.

It is the intention of this agreement that the payments made to the bank in escrow shall be withheld by the bank until the title to said premises is in such condition that the deeds herein specified will confer upon the party of the second part such title as is herein covenanted, and that after said title is perfected as aforesaid, and so found by the solicitors of the party of the second part, that then the payments made to the bank shall be paid over forthwith to the party of the first part, but that the deed shall remain in escrow until the completion of all the payments. This insrument in all its parts shall be binding upon the said first party and all of its stockholders, its successors and assigns, and shall run to and in favor of the said second party, his heirs, legal representatives, and assigns, forever.

In witness whereof, the said first party has caused these presents to be signed by its president, and attested by its secretary under its corporate seal, and the said second party has attached hereto his hand and seal, all done the day, date, and place first above written.

        The Badger Silver Mining Company of Gillies, Ontario,
[Corporate Seal.]              By John M. Stowell, President.
Attest: Walter Read, Secretary.
            Herbert N. Nichols. [Seal.]
Signed, sealed, and delivered in presence of:
    Elias H. Bottom.

State of Wisconsin, Milwaukee County—ss.: Be it remembered that on this 7th day of Feby., 1891, personally appeared before me John M. Stowell, president, and Walter Read, secretary, of the Badger Silver Mining Company of Gillies, Ontario, to me personally well known to be such officers, and to me well known to be the persons described in and who executed the foregoing contract, and severally and duly acknowledged the execution of the foregoing contract as president and secretary, respectively, as their free act and deed of said corporation; and the said John M. Stowell and Walter Read severally affirmed before me that they executed the foregoing contract for and on behalf of the said corporation by virtue of and pursuant to the unanimous vote of the directors of said corporation lawfully taken.

Witness my hand and official seal.        Chas. L. Goss.
   [Notarial Seal.]        Notary Public Milwaukee County, Wisconsin.

                        Milwaukee. Wisconsin, Jan. 30, '91.

For good and valuable considerations to us and each of us, who are stockholders of the Badger Silver Mining Co., the party of the first part in the foregoing contract, this day in hand paid, the receipt of which is hereby acknowledged, we, the undersigned, do hereby fully consent to ratify, approve, and confirm the action of the Badger Silver Mining Co. as evidenced by the foregoing instrument and all of its parts, and hereby covenant to and with Herbert N. Nichols, the party of the second part to said contract, his heirs, legal representatives, and assigns, forever, that we and each of us hereby do and will and shall guaranty the full, complete, and prompt performance by the said Badger Silver Mining Co. of all and every part of the said contract by the said Badger Silver Mining Co. to be performed. The individual liability of each of us under this contract is however expressly limited to such proportion of the purchase price specified in the foregoing instrument as our respective holdings of the stock of said Badger Silver Mining Co. bear to the total capital stock thereof.

| Name of Stockholders. | No. of Shares. |
|---|---|
| Jno. M. Stowell | 6,362½ |
| Geo. W. Robinson | 11,923 |
| C. A. Reed | 7,591 |
| Walter Read | 8,148½ |
| Chas. E. Sammons | 5,312½ |
| Ch. Preusser | 1,250 |

The declaration alleges that Nichols was, at the time of the negotiation and making of the contract, a duly-authorized agent of the defendants, A. M. Drake and Levy Mayer, and of C. E. Dickerman and A. H. Wilder, for the purpose of making the contract, and that said Nichols entered into and executed the contract as the agent for and on behalf of the said Drake, Mayer, Dickerman, and Wilder; that Dickerman and Wilder have died since the execution and delivery of the contract, and were never residents of the state of Florida, and that the plaintiff company has not been able to ascertain who had been appointed as administrator of the estate of either of said decedents; that, in pursuance of the said contract, defendants and their associates paid to the said first party $25,000, the first two payments under the contract, on or about the 10th of February, 1891; and that on or about the last-named date the defendants and the said Dickerman and Wilder received, and the said first party delivered, possession of all the property mentioned in said contract as purchased by the said Nichols, and have ever since retained the same. The declaration also alleges the delivery by the first party to the bank named in the contract of sufficient deeds of the lands described in the contract, and the making of a good title to Nichols to said lands, and that all things precedent to be done by the plaintiff had been done, but that the defendants had not carried out the contract or paid any further portion of the purchase money beyond $25,000. The transfer from the first party to the contract to the plaintiff herein of the contract and all its rights thereunder is alleged, and the declaration seeks to recover from Drake and Mayer the purchase price of the property sold and delivered. In the second count it alleges the damages sustained by the plaintiff to have been the loss of profits arising from the defendants' failure to carry out the contract. The third count alleges that the defendants and their associates have been in possession of the property ever since the time of delivery, and have derived therefrom large sums of money, which the plaintiff seeks to recover.

The declaration was demurred to, on the ground that the declaration and contract showed that Nichols was not the agent of the defendant Drake, and that no testimony was admissible to establish such agency. The demurrer was sustained by the order following:

"This cause having come on to be heard, by brief, on defendant's demurrer to plaintiff's declaration, and having been duly considered, the court considers that the decisions cited in 135 U. S. 313, 10 Sup. Ct. 831 [Willard v. Wood], 64 N. Y. 358 [Briggs v. Partridge], and 2 N. E. 785 [Haley v. Belting Co. (Mass.)], apply to the facts in this case; that the contract sued upon was not a contract for sale, but a contract of sale, so far as questions of covenanting by both parties are concerned; that third parties not mentioned in the contract cannot be sued upon covenants to which they are not directly parties in the contract. Nichols covenants for himself, and discloses no one else. It is therefore ordered that the demurrer herein be sustained."

The plaintiff then filed an amended declaration based, in one count, on the theory of an implied contract on the part of the defendants to pay for the value of the property, as evidenced by the purchase price, specified in the written contract, on the alleged grounds that the defendants and their associates received and retained the property.

In another count the theory is that the defendants are liable to pay for the value of the silver ore taken from the mines while in the possession of the defendants and their associates, which ore is alleged to have been converted by the defendants to their use. This amended declaration was also demurred to, and demurrer sustained.

W. A. Blount and A. C. Blount, Jr., for plaintiff in error.

H. Bisbee, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

PER CURIAM. For the reasons given by the trial judge, and considering Willard v. Wood, 135 U. S. 309, 313, 10 Sup. Ct. 831, Cragin v. Lovell, 109 U. S. 194, 3 Sup. Ct. 132, Briggs v. Partridge, 64 N. Y. 358, and Haley v. Belting Co., 140 Mass. 73, 2 N. E. 785, the judgment of the circuit court is affirmed.