UNITED SHEET & TIN PLATE CO. v. HESS et al.

(Circuit Court of Appeals, Sixth Circuit.    March 18, 1908.)

No. 1,744.

BANKRUPTCY—MORTGAGES—RESTORATION—PARTIES.

Complainants were mortgage creditors and stockholders in the T. Co., which was thereafter merged in the bankrupt. Shortly after the merger the bankrupt executed a trust mortgage to secure a bond issue, in which there was a provision for the satisfaction of complainants' debt from the

proceeds of the bonds; but complainants claimed that after they had agreed to such mortgage a surreptitious addendum was inserted, authorizing the bankrupt to employ the bonds as collateral security without reference to complainants' lien. Complainants also asserted that they were induced by fraudulent representations to surrender their security on the assets of the T. Co., and accept the bankrupt's bonds in lieu thereof, and prayed that the transfer of the T. Co.'s property to the bankrupt be set aside and complainants relegated to their original positions as creditors and shareholders of that company, and if that could not be done that their claims be declared and enforced as a first lien on that part of the T. Co.'s property that had been acquired by the bankrupt. *Held*, that a decree granting either relief would not be binding on the mortgagees under the trust mortgage, who were not parties, and that the trustee under such mortgage was an indispensable party to the suit.

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio.

I. H. Taylor, for appellant.

J. F. Foster, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is an appeal from a decree arising upon a controversy over a lien claimed against the property of the bankrupt by an intervening creditor. The bankrupt is the United Sheet & Tin Plate Company. The intervening creditors are the appellees, Henry Hess, Rankin L. Shoemaker, and the executors of Thomas Hackett. These creditors by petition asserted a mortgage lien upon certain property of the bankrupt corporation arising under a mortgage made to secure them by the Tuscora Steel Company, the then owners of the property upon which the lien is now asserted. This property of the Tuscora Steel Company was subsequently conveyed to the bankrupt. The contract of sale, it is claimed, recognized the lien of the debt due to the petitioners, and, among other things, provided that the United Sheet & Tin Plate Company, the bankrupt, should issue bonds secured—

"by a first mortgage on all the properties of the two plants [the Union Sheet & Tin Plate Company, acquired not only the plant of the Tuscora Company, but also the plant of another company known as the Marietta Sheet & Tin Plate Company] taken in by the said company under this agreement and such other properties as it may take in prior to the execution of the said mortgage, the total amount of the said issue to be $250,000. Said mortgage shall be executed to a trust company, as trustee, and it shall be incorporated in the terms of the said mortgage that the said trust company shall receive the proceeds of the said bond issue, and pay over to the said company the first proceeds arising from the sale of said bonds, up to the sum of $60,000, to be used as working capital for the plants taken in by the said company. The said trust company shall apply the proceeds of the sale of the remaining bonds, first and ratably to the payment of the preferred claims against the two companies, said preferred indebtedness of the Tuscora Steel Company, amounting to about $31,000, due R. L. Shoemaker, Thos. Hackett, Henry Hess, H. F. Strous, and Larkin C. Taylor, and secured by a mortgage of $38,000 to Thos. Hackett and others."

The mortgage provided for was drawn and submitted to the attorney for petitioners, and as so submitted was approved. As thus submitted and drawn, the petitioners state that it contained the provisions for their protection recited above. It is then averred that afterwards,

and without their knowledge or consent, there was added a clause in these words:

"But nothing in this article [referring to an article of the blanket mortgage providing for the satisfaction of the debt due the petitioners] shall prevent said company from using or employing said bonds or any of them as collateral security."

This mortgage, with this alleged surreptitious addendum, was recorded September 16, 1903. This alteration in the contract and mortgage, it is charged, was not known to the petitioners until they heard of the issuance of the bonds and the use of the bonds as collateral security as follows: To the American Sheet & Tin Plate Company, to the extent of $27,000; to the Guernsey National Bank, of Cambridge, Ohio, $14,000; to the Harbor Bank, of Canton, Ohio, $19,500. Upon learning the situation, petitioners say, they were about to file a petition to restrain the issuance of other bonds and to compel the return of the bonds so already issued. Negotiations were begun with the mortgagor company, which resulted in a certain showing being made to the petitioners in respect to the solvency of the mortgagor, whereby "they were induced to waive their objections to the violation of the original contract of consolidation by the fraudulent interpolation in said mortgage and the unauthorized issuance and disposition of bonds as aforesaid, and to take bonds of the Union Sheet & Tin Plate Company, secured by said mortgage," etc. The purpose of this agreement was, confessedly, to protect these appellees as preferred creditors, and that purpose was so declared. It was agreed between the bankrupt and the appellees, among other things, that appellees—

"hold notes of the Tuscora Steel Company, as follows: R. L. Shoemaker and Henry Hess, $2,500; Thomas Hackett, $5,000; M. F. Strauss and Larkin C. Taylor, $5,000. These parties agree to accept in payment for said notes and accrued interest bonds of said issue above mentioned at 85 per cent. and accrued interest, and the Columbus Savings & Trust Company, trustee, is hereby authorized and directed, upon receipt of said notes, canceled, to issue bonds for same as herein provided, and return said notes to the treasurer of the United Steel & Tin Plate Company, and fractional amounts necessary to adjust the account to be paid in cash out of the sales of the bonds as herein provided. The trustee is also authorized to issue bonds at 85 in payment of the account of the American Tin & Terne Plate Company amounting to $1,234.37; the amount necessary to balance the account to be adjusted in cash out of the proceeds of the bond."

In accordance with this arrangement the petitioners seem to have surrendered the notes of the Tuscora Steel Company and to have accepted from the trustee named in the clause of waiver above bonds of the bankrupt company as provided in that agreement. The petition attacks this latter agreement as induced by active fraud and as a part of a general scheme of fraud by which the said company had acquired the property of the Tuscora Company. They say that the representations made to induce them to accept the bonds of the bankrupt company so secured under said mortgage licensing an issue of $250,000 of bonds were false and fraudulent and made to cheat and defraud. They also aver that they were large shareholders in the Tuscora Steel Company, and had accepted stock for their interest therein in the bankrupt company, in reliance upon their agreement that the sale would be car-

ried out in good faith. The prayer is: (1) That the transfer of the property of the Tuscora Company be set aside and the deed canceled and the parties relegated to their original positions as creditors and shareholders in that company. (2) If this cannot be done, that their claims be declared and enforced as a first lien upon that part of the property of the Tuscora Company acquired by the bankrupt.

The court below upon the pleadings and the evidence decreed to the petitioners a lien and charge upon the property of the Tuscora Company and ordered the same to be sold for its satisfaction. It may be here added that, pending the bankrupt proceedings, a composition was agreed upon between the bankrupt corporation and its creditors, which was confirmed by the court, with a proviso that "the composition should not affect the secured creditors of said bankrupt, or any lien or other securities held by any creditor of said bankrupt," and that "all liens or claims alleged or claimed in any pleading now filed in this proceeding in bankruptcy * * * will be hereafter adjusted by this court." It was further ordered that the trustee should—

"turn over to said bankrupt all property in his hands as such trustee, but that such turning over shall in no wise affect any intervening petition or cross-petition filed herein, or any cause of action, right of action, or equity therein set up, or any lien therein claimed, or any other secured claim against said bankrupt, or lien or claimed lien on any of the property of said bankrupt, all of which, unless settled by agreement of the parties, shall be considered and heard and adjudicated herein, and enforced where adjudicated to exist, and all said intervening petitions and intervening cross-petitions shall be prosecuted to final adjudication herein unless sooner dismissed."

Under this reservation the claim of liens herein asserted was adjudicated with the result stated. From this decree the bankrupt only has appealed.

There is no better established principle than that all parties interested, whose rights will be directly affected by the decree, must be made parties to the suit. There are exceptions to this rule, growing out of the necessities of particular cases, which need not be here referred to. The relief which the petitioners sought was directly hostile to the mortgage of September 1, 1893. That mortgage included the property of the Tuscora Company and secures an issue of $250,000 in bonds issued by the mortgagor, the bankrupt appellant. In one aspect the petitioners sought to annul the agreement consolidating the Tuscora Company with the newly organized company, the mortgagor, and appellant, and to be relegated to their rights as stockholders in and mortgage creditors of the Tuscora Steel Company. Failing in this, they sought to enforce the lien of their mortgage, a lien antedating the conveyance to the bankrupt, as well as the mortgage made by it. A decree upon either aspect of the case would be fruitless, unless the mortgagees would be thereby concluded. That they would not be, not being parties, is too plain to be discussed. Louisville Trust Company v. Cincinnati, 76 Fed. 296, 22 C. C. A. 334; Keokuk & Western Railroad Company v. Missouri, 152 U. S. 301, 14 Sup. Ct. 592, 38 L. Ed. 450. That the decree adjudicating the appellees' lien will be fruitless, and the sale plainly subject to any rights which could not be affected by a decree against the mortgagor alone, is also obvious. It was error to proceed without the trustee under the mortgage of September 1, 1903.

Reverse, with direction to set aside the decree of reference, the decree confirming master's report, and final decree, with leave to amend by making the trustee of the mortgage of September, 1893, a party defendant, if appellees shall be so advised, or dismiss the petition for want of proper and necessary parties.