LOUISVILLE WOOLEN MILLS v. TAPP et al.

(Circuit Court of Appeals, Sixth Circuit. February 6, 1917.)

No. 2958.

1. MECHANICS' LIENS ⬤⟱198—PRIORITY OF MATERIALMAN'S LIEN OVER LANDLORD'S LIEN.

Ky. St. § 2314, declares that if, after the commencement of any tenancy, a lien be created, the lienor may remove the property only by satisfying the landlord's lien; while section 2315 declares that an execution against the tenant, levied on property found on the demised premises, shall be

subject to the landlord's lien. Section 2316 declares that any valid liens on the personal property of the lessee created before it was carried on the leased premises shall prevail against the landlord, while, if such lien be created, whilst the property is on the demised premises the landlord shall have preference; and section 2317 declares that a landlord shall have a superior lien on the personal property of the tenant owned by him after possession is taken under the lease. Section 2487 gave one who furnished property to a bankrupt clothing company a lien on property so furnished; while sections 2488, 2489, and 2490 provide that such lien shall be superior to the lien of any mortgage or other incumbrance thereafter created, etc. *Held* that, as the materialman's lien is in the nature of a reservation, being created before the property was placed on the demised premises, and as such lien is placed on a par with wage claims, and is declared to be superior to the lien of any mortgage or other incumbrance thereafter created, the lien for wages accruing within six months being superior to that of mortgages theretofore created, the materialman's lien on property furnished and placed on the demised premises took priority over the lien of the landlord.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 348–355; Dec. Dig. ☞198.]

2. MECHANICS' LIENS ☞198—PRIORITY OF MATERIALMAN'S LIEN OVER LANDLORD'S LIEN.

Where a lease expired by its terms in November, and by virtue of a holding over for three months a new tenancy from year to year was created, in accordance with Ky. St. § 2295, such tenancy must be deemed one created at the date of the expiration of the old lease, and hence a lien for rent accruing under the second tenancy is inferior to the lien of a materialman for property on the demised premises at the time the second tenancy was created.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 348–355; Dec. Dig. ☞198.]

3. BANKRUPTCY ☞249—TRUSTEES IN BANKRUPTCY—EXPENSES OF ADMINISTRATION.

Where the landlord asserts a lien on the property of a bankrupt tenant found on the demised premises, the trustee has the option to pay the claim of the landlord, or to refuse and surrender the premises, allowing the landlord to perfect such claim as he may against the estate, and so the trustee, having retained possession of the demised premises for the purpose of winding up the estate, is entitled to charge the rent paid during that time as an expense of administration, although not rent which accrued before bankruptcy, or that paid after the trustee ceased to use the premises; it not appearing that the payment of such rent was necessary to enable the trustee to retain possession desired.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 347; Dec. Dig. ☞249.]

4. BANKRUPTCY ☞273—LIABILITY TO ESTATE—CLAIMS.

Where a landlord, who asserted a lien on the property of the bankrupt tenant found on the demised premises, was overpaid by the trustee, his liability to repay amounts to the estate was primary, although the trustee was also liable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 347; Dec. Dig. ☞273.]

5. BANKRUPTCY ☞273—PAYMENTS BY TRUSTEE—PROTECTION.

Payments by a trustee in bankruptcy pursuant to orders of the referee, not made at creditor's meetings and without notice, while the supersedeas

of a former appeal was in effect, must be deemed voluntary payments by the trustee; the orders not being any protection.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 347; Dec. Dig. ☞273.]

Petition to Revise and Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

In the matter of the bankruptcy of the Tapp Clothing Company. The landlord's lien of P. H. Tapp and another was adjudged to have priority, and the Louisville Woolen Mills, a corporation, petitions to revise and appeals. Reversed and remanded on appeal, and petition to revise dismissed.

W. S. Mendel, of Louisville, Ky., for petitioner and appellant.

J. B. Baskin and D. A. Sachs, Jr., both of Louisville, Ky., for respondents and appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. In the case of Louisville Woolen Mills v. Johnson, 228 Fed. 606, 143 C. C. A. 128, we had for review certain proceedings in the matter of the Tapp Clothing Company, bankrupt, and we held that the Woolen Mills had a materialman's lien, under the Kentucky statute, against the bankrupt estate. In further proceedings below, in the same estate, it appeared that Tapp, as owner of the factory premises, had a landlord's lien against the same body of property. There was not enough to satisfy both; and the referee and the District Judge have both held that the landlord's lien takes precedence. Whether this view was right is the question for present decision.

Each lien is created by an independent section of the Kentucky Statutes. The sections have no direct relation to each other. Apparently, when each lien was created, the existence of the other was not distinctly in the legislative mind. Which one is superior must be determined by comparison of the statutes and by interpretation of the general language. Unfortunately the subject has not been considered in any direct way by the Kentucky Court of Appeals.

[1] A landlord's lien arises under Kentucky Statutes, § 2317, and is regulated by sections 2314, 2315 and 2316. Section 2317 says:

"A landlord shall have a superior lien on the * * * personal property of the tenant * * * owned by him after possession is taken under the lease."

Section 2314 provides that "if, after the commencement of any tenancy, a lien be created on the property upon the leased premises," the lienor may remove the property from the premises only upon satisfying the landlord's lien; by section 2315, an execution against the tenant, levied on the property found on the leased premises, must be satisfied subject to the landlord's lien; and section 2316 says: "All valid liens upon the personal property of a lessee, * * * created before the property was carried upon the leased premises, shall prevail against * * * the landlord," while, "if such lien be created whilst the prop-

erty is on the leased premises," then the landlord must have preference.

The materialman's lien arose under section 2487, and is regulated by sections 2488, 2489, and 2490. Section 2488 provides that it "shall be superior to the lien of any mortgage or other incumbrance thereafter created." This court has considered the nature of the landlord's lien, as applicable in bankruptcy proceedings, in Courtney v. Fidelity Co., 219 Fed. 57, 134 C. C. A. 595, and has discussed the character of the materialman's lien in the Johnson Case, supra, and the cases therein cited.

The District Judge applied the rule of some earlier decisions in the District Court. These depended, essentially, upon the theory that the lien of the materialman did not vest or exist or attach in any tangible way until the time of bankruptcy, but was an inchoate right to a preference upon distribution if the specified distribution should occur, rather than a definite lien. If this view should be adopted, it would solve the present controversy; but we think it is inconsistent with the Johnson Case and our previous opinions there cited and discussed. The unescapable inference from these opinions is that the materialman's lien is created along with the shipment and delivery of the goods, and that the statutory provisions which specify "when" the materialman shall "have" the lien refer to the maturity of the lien and to the time when and the event on account of which it may be foreclosed or enforced. We see no construction, other than this, which will make the law reasonably efficient and workable. It is a mistake to suppose that this lien may never come to full maturity, unless under exceptional conditions which the lienor cannot control. It may be avoided by payment; but, short of that, the lienor can always bring it to maturity by taking judgment and levying execution.[1]

Keeping in view these characteristics of the materialman's lien, and without expressing any opinion as to whether it may be subject to a landlord's lien under a lease in existence when the property was taken upon the leased premises, we are compelled to think that it does take priority over the lien of the landlord under a lease made after the shipment and delivery of the raw materials to the manufacturing tenant. With otherwise equally balanced considerations on both sides of the argument, there are three things which lead us to the conclusion stated:

The first is that section 2316, which undertakes to declare the respective rank of the landlord's lien and all other valid liens on defendant's property, makes it turn upon the situation when the property, sought to be subjected, was carried upon the premises; and the lien of the materialman, for the unpaid purchase price, is in the nature of

---

[1] We do not overlook Hall v. Guthrie, 103 S. W. 721, 31 Ky. Law Rep. 801, in which it was said that there was no lien before the happening of the event (in that case, an assignment). The question was whether, when the materials were furnished, the lien came into existence in such a way as to make necessary the filing of the claim of lien specifically required for builders' liens and which some general language seemed to apply to all liens. Whether a lien exists so far as to carry such a burden and whether it exists far enough to give it reasonable efficiency are obviously different questions.

a reservation. In a very substantial, though not in a technical, way, the materials are subject to this claim from the time they leave the vendor's hands until they are paid for, and this reserved claim is, for convenience, transferred to the body of property with which the materials are mingled. The landlord's lien has no opportunity to attach to such materials, original or substituted, save subject to the already existing claim and contingent lien of the vendor. The landlord can hardly be prejudiced by the assertion of the other and—in a sense—earlier lien, and this because it is not required to be recorded, and the landlord must usually know of the existence of this class of liens and may govern himself accordingly.

The second is that the materialman's lien is given by the same statute and is enforced in the same way as the employé's lien for wages. Section 2488 says that the lien for material or wages "shall be superior to the lien of any mortgage or other incumbrance thereafter created," and that the lien for wages accruing within 6 months shall be superior even to the lien of any mortgage or other incumbrance theretofore created. It follows that the landlord's lien, created after materials were furnished, cannot be given priority over the lien for material without, at the same time, making it superior to any lien for wages which are more than 6 months old. Since the landlord's lien may reach back 11 months, this would be to say that the lien for rent of a factory building, accruing during the first 5 of the 11 months just ended, was superior to the lien for wages accruing during the same period, and in view of the universal favor given labor liens, this would be an unusual presumption.

The third thing is that the section just cited expressly declares priority over "any mortgage or other incumbrance thereafter created." The effect of this language to give priority to the lien for material cannot be evaded, except by saying that the landlord's lien is not an "other incumbrance." This restrictive meaning is said to be made out by reliance upon the rule of ejusdem generis. We think that rule cannot be here applied. We observe no instance of any incumbrance, other than a mortgage, of precisely the same class, and hence, unless "other incumbrance" is intended to reach beyond the specific class, the words can have no meaning. Further, a mortgage is not an incumbrance of lesser dignity than a lien for rent. Such lien may be created by mortgage provisions in the lease, or may be implied by law from the contract which the parties make. No reason appears why the labor or material lien should have been given priority over an express mortgage for rent, and yet be subject to an implied lien for the same rent. The holding in Hatton v. Rogers, 134 Ky. 840, 121 S. W. 698, to the effect that an attachment was not an "incumbrance," is not applicable to a statutory environment materially different from that there considered.

Upon the whole, we think it reasonably clear that of these two liens in this case the landlord's is of inferior rank.

[2] In the application of this last-quoted section, we find that the landlord's lien in question is one "thereafter created." In the present case, the appellant's material was carried onto the premises in June;

it does not appear that any of the property claimed to be subject to the landlord's lien was added after October. The lease, existing in June, expired, by its terms, November 1st; by the force of section 2295, Kentucky Statutes, and by virtue of a holding over by both parties for 3 months, there arose a further relation of landlord and tenant for one year from November 1st; the bankruptcy occurred February 26th; and all rent for which a lien is claimed accrued after November. The Kentucky Court of Appeals, in Lyons v. Deppen, 90 Ky. 305, 14 S. W. 279, held that a lien for rent under a renewal lease was inferior to a mortgage given during the term of the original lease. In English v. Duncan, 14 Bush (Ky.) 377, the court was careful to point out that the term of the lease did not appear. Neither upon the reasoning of Lyons v. Deppen, supra, nor upon the principles involved do we see any way to distinguish between a new lease duly signed upon a separate paper and a written extension indorsed upon the foot of the old lease and an extension implied by law from the joint voluntary act of the parties. In each instance the extended term is a new contract. It follows that the landlord's lien in this instance must be considered as having been created as of November 1st.

[3] One further circumstance affects the landlord's right. Under the rule declared by this court in Courtney v. Fidelity Co., 219 Fed. 57, 66, 134 C. C. A. 595, the trustee in bankruptcy in these cases has the option (to be exercised on his judgment, or by vote of the creditors, or by order of the court, as the case may be) to pay the claim of the landlord for the full amount of the rent for the future period to which the lien extends, or to refuse to do so, surrender the premises to the landlord and thereby subject the estate to such lien as the landlord may succeed in establishing to cover his loss. Obviously, in the former alternative, the trustee is entitled to the possession of the premises during the period which he pays for, and if the premises are needed and used by the trustee for carrying on the business or other administration purposes, their rent, or, at least, their rental value, forms an expense of administration. Kinkead v. Bacon, 230 Fed. 362, 144 C. C. A. 504. In this case the trustee used the premises for carrying on and closing out the business for a period not shown by the record. As to the rent which had accrued before bankruptcy, the present record contains no sufficient justification for treating it as an administration expense. Since the alternative to paying past-due rent is to get out, and since it may sometimes be essential to the administration that the trustee keep possession of the premises for a time, it may happen that the relation between the past-due rent and the desirability of keeping the premises will justify an order that this rent be paid by the trustee as part of the cost of conducting the liquidation; the trustee does not seem to have made any such claim in this case. The rent which accrued after the trustee ceased to use the premises for the business of the estate, and during the period when he was merely minimizing his loss by subletting as much as possible, we cannot consider as cost of administration. However, all subrentals which he actually received were subject to an equitable charge in favor of

the landlord, and it was not wrong to pay them over. In no case could the lien for materials reach such subrentals.

The question was raised below whether the lien for materials extended to the whole fund in court. We do not see that it was decided, and the record does not enable us to do so.

[4, 5] Whatever amount has been overpaid to the landlord should be repaid by him to the trustee. His is the primary liability, but the trustee is also liable to the estate. The payments by him must be considered voluntary. Each was made pursuant to an order of the referee, but these orders were made without notice to any one and not at a creditors' meeting, and most of them even while the supersedeas of the former appeal was in effect. Such orders do not protect the trustee. Cabenas v. Coe (D. C., N. Y.) 178 Fed. 158; United Co. v. Hess (C. C. A. 6) 159 Fed. 889, 87 C. C. A. 69; Loveland (4th Ed.) § 576; Remington, § 1889; Collier (10th Ed.) § 58.

Upon the appeal, the case must be remanded for modification in conformity with this opinion. The appellant will recover costs.

The petition to revise is dismissed.

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes