## In re BARNHARDT COAL & LIMESTONE CO.

(District Court, N. D. Ohio, E. D. October, 1919.)

1. **Mines and minerals ⊂⇒70 (4)—Lease held terminable only at end of 30 days after expiration of yearly period from date, provided yearly payments were less than $250.**

   Under a mining lease, requiring payment of royalty quarterly and providing that it should not be less than $250 per year, and that failure to make payments within 30 days after due should terminate the lease, where during some quarters no mining was done, and hence no royalty due, the lease *held* terminable only at the end of 30 days after expiration of the yearly period from its date, provided payments during the year were less than $250.

2. **Bankruptcy ⊂⇒151—Trustee takes lease subject to same conditions as held by bankrupt.**

   The trustee of a mining lessee takes the lease subject to the same burdens as rested on the lessee, and may keep it only by complying with its terms and conditions.

3. **Mines and minerals ⊂⇒70 (4)—Notice and demand by cross-petition in bankruptcy held sufficient to protect lessor's right to forfeiture.**

   Where at the time the right of lessor to forfeit a mining lease for default accrued, the estate of lessee was in bankruptcy, and a petition by the trustee for sale of the lease was pending, the filing of a cross-petition by lessor for forfeiture, although premature, *held* sufficient notice and demand to protect the right.

4. **Bankruptcy ⊂⇒255—Forfeiture will not be enforced against trustee.**

   Where a mining lease held by bankrupt became subject to forfeiture under its terms pending the proceedings, the trustee will be permitted to avoid the forfeiture and retain the lease by paying the royalty in arrears.

5. **Bankruptcy ⊂⇒257—Mines and minerals ⊂⇒70 (4)—Mining lease subject to sale by trustee.**

   A mining lease purporting to sell and convey all coal and limestone on the premises, with right to mine so long as desired on payment of royalty of not less than $500 per year, or, if less, on payment of the deficiency, with no provision for forfeiture for nonpayment, *held* in effect a lease from year to year on an annual rental of $500, not terminable for default in payment, and which on bankruptcy of lessee, may be sold as part of the estate on payment of accrued rental.

In Bankruptcy. In the matter of the Barnhardt Coal & Limestone Company, bankrupt. On review of order of referee. Modified.

McCarty, Armstrong & Rainsberger, of Canton, Ohio, for petitioner. Joseph Blake, of Canton, Ohio, for trustee in bankruptcy.

WESTENHAVER, District Judge. This cause is before me on petition of Samantha J. Holl to review the finding and judgment of the referee in relation to two mining leases, one of which was executed by Clayton Holl and others, dated April 3, 1917, and the other by Clayton Holl and others, dated July 7, 1917. Both leases had passed by mesne assignments to the bankrupt prior to the filing of the bankruptcy petition herein. The petitioner urges that both leases were forfeited or terminated because of the violation of certain covenants therein contained, which contention was denied by the referee, and

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an order made that the leases should be sold as a part of the bankrupt's assets.

[1] Lease No. 1, dated April 3, 1917, requires the payment of a certain royalty on all coal and limestone mined, payments to be made quarterly between the 1st and 10th days of April, June, July, and October of each year, and to cover royalties for each preceding three months. The only forfeiture or termination clause herein is in these words:

"Second party shall produce enough lime in the forms herein mentioned and sell enough coal to net first party a royalty of $250 per year for coal and limestone. The failure to make the payments under this lease within 30 days from the date the same becomes due by the party of the second part will end and terminate this lease."

Payment was made of $88.15 for the three months ending June 30, 1918, and $83.62 for the three months ending October 1, 1918. Since the last date it appears that no coal or limestone was produced or mined, and no payments have been made. The petition in bankruptcy was filed, and an adjudication in bankruptcy was made in November, 1918, since which time all the bankrupt's property, including these mining leases, has been in the possession either of the receiver or of the trustee. In January, 1919, the lessor gave notice to the trustee of her intention to exact a forfeiture at the end of the 30 days within which payment for the preceding quarter should be made for failure to make such payment. Her answer and cross-petition herein was filed April 5, 1919, asserting that the lease was terminated for failure to make payment as required by the previous demand, and praying that the lease might be declared forfeited and stricken from the inventory of the bankrupt's assets and the premises surrendered to her.

Obviously no violation of the covenants above quoted had in January taken place. On the other hand, if the one-year period within which limestone and coal shall be produced and mined sufficient to net a royalty of $250 is to date from the beginning of the lease, then a right to forfeit or terminate the lease would accrue at the end of 30 days after April 3, 1919, for the reason that the two payments previously made during the year aggregated only $171.77. This seems to me to be the reasonable construction to be put on the lease, rather than a construction, contended for by the trustee, that one year should elapse from the date of the last payment in October, 1918, before such a right would accrue. This construction follows from the terms of the lease itself, and particularly its date and the time fixed for the first quarterly payment of royalties to be made.

[2] According to the authorities cited and the principles of law stated in the referee's opinion, the trustee took this lease subject to the same burdens as rested upon the lessee, and is entitled to keep and retain it only by complying with its terms and conditions. Atchison, Topeka & Santa Fé Railway Co. v. Hurley (C. C. A. 8th Cir.) 18 Am. Bankr. Rep. 396, 153 Fed. 503, 82 C. C. A. 453; Louisville Woolen Mills v. Tapp (C. C. A. 6th Cir.) 38 Am. Bankr. Rep. 529, 239 Fed. 463, 152 C. C. A. 341. At the time notice was given, and also when

the answer and cross-petition was filed, the right to terminate under the construction put on the lease as above had not yet accrued. The lease was terminable for such failure, however, not later than May 3, 1919. During all this period, however, and continuously since, the premises covered by these leases were in possession of the trustee, and an application was pending to sell the leases, the hearings on which were adjourned from time to time, and not ended until in September.

[3] In this situation, it seems to me that no formal demand or notice other than the filing of the lessor's cross-petition is necessary to protect or assert the right to exact a forfeiture. The trustee is an officer of the bankruptcy court. That court has full power and is charged with the duty of administering the assets, with due regard to the rights of all parties interested therein. The filing and pendency of an answer and cross-petition asserting lessor's rights and praying for a termination or forfeiture should be regarded as sufficient compliance with any technical notice or demand.

[4] The referee erred in not requiring the trustee either to surrender the premises or to pay the balance of one year's net royalty due April 3, 1919. The trustee may accept the lease, with its burdens, or he may refuse so to do; but he can accept and keep it only on condition that he make the payments which the lessee was required to make in order to prevent a forfeiture or termination. However, a forfeiture for mere failure to pay rent or royalty is not favored in equity, and will be relieved against in equity upon payment of the overdue rent or royalty, with interest, unless special circumstances are made to appear which would render this relief inequitable. 24 Cyc. 1364. The trustee may even now, no special inequitable circumstances to the contrary appearing, obtain relief against the forfeiture by making such overdue payments, with interest; but unless he elects so to do, and does make such payments, that lease should be treated as terminated and the premises surrendered. The referee is instructed to proceed further in conformity to these principles.

[5] The second lease, that dated July 7, 1917, purports to sell, transfer, and convey all the coal and limestone in, under, or upon the premises therein described. A royalty at a certain rate per ton is to be paid for each ton of limestone or coal mined or removed. Sufficient quantities of coal and limestone are required to be mined each year to produce, at the royalty rates fixed, the sum of $500, or that this sum shall be paid the same as if no such quantity had been mined. The lease is to continue in force so long as there shall remain in the leased premises unmined coal and limestone in excess of the amount paid for in advance; that is, to say, such quantity as at the agreed royalty would amount to $500. The only forfeiture or termination clauses are the following:

"It is agreed by and between the parties that, unless said second party shall enter upon said premises and make exploration thereon for coal and limestone within 90 days from the date hereof, then and in that case this lease shall be null and void, and all parties shall be ipso facto released from all liabilities accrued and prospective hereunder."

The lessee is also given the right to abandon the premises and mining operations, and to remove all railroads, fixtures, buildings, etc., and to be released from all obligations whenever in its judgment the mining of coal and limestone becomes unprofitable.

The referee finds that there is no proof of a failure to enter on the premises and make explorations within 90 days, but that, on the contrary, such entry and exploration was made, and the existence of coal and limestone was thereby determined, and that the bankrupt and its several assignors had no intention at any time of abandoning the premises and terminating the lease because the mining of coal or limestone was or had become unprofitable. No coal or limestone was in point of fact mined, and the $500 minimum royalty, which should have been paid not later than October 1, 1918, was not paid, nor have any payments been made since, either by the receiver or trustee in bankruptcy. The provisions of this lease are similar to those considered by the Supreme Court of Ohio in the following cases: Harris v. Ohio Oil Co., 57 Ohio St. 118, 48 N. E. 502; Gas Co. v. Eckhert, 70 Ohio St. 127, 71 N. E. 281; Oil Co. v. Robinson, 71 Ohio St. 302, 73 N. E. 222, 104 Am. St. Rep. 773, 2 Ann. Cas. 444. The interest granted by this lease is not merely a license, but an estate in the premises. The right to enjoy that estate is not dependent on any condition precedent, except the requirement that entry and explorations should be made within 90 days, which was done. No forfeiture or termination is provided for, except in the event of a failure to make such entry and exploration. No right to forfeit or terminate is given for failure to pay the minimum royalty of $500 a year. Any implied covenant or obligation to exercise reasonable diligence in mining limestone and coal is merged in the covenant to pay $500 a year in the event of failure to operate. The lease becomes, as was said in Gas Co. v. Eckhert, supra, a lease from year to year upon an annual rental of $500. The cases cited by counsel for petitioner, in which mining leases have been canceled by courts of equity for failure to keep an implied obligation to exercise reasonable diligence, are not in point.

The only question then is: What is the effect under these conditions of a failure to pay the $500? The referee, in my opinion, reached the correct conclusion, namely, that no forfeiture or right to terminate has resulted therefrom, and that the lease may be sold as an asset of the bankrupt's estate. The payments which have accrued during bankruptcy may be treated and provided for as an expense of administration, or an expenditure necessary for the preservation of the estate; but the failure of the referee to make provision therefor in the order of sale does not require a reversal of his finding and judgment. No request was made of him so to do. One may still be made, with the right to have his rulings reviewed here, in the event parties are dissatisfied with his action.

This case will be remanded to the referee, with instructions to correct and modify the order of sale and proceed further in conformity herewith. An exception may be noted.