### In re UNITED CIGAR STORES CO. OF AMERICA.

### PICKER et al. v. IRVING TRUST CO. et al.

### No. 71.

Circuit Court of Appeals, Second Circuit.
Nov. 30, 1936.

Charles Rosenbaum, of New York City (Mortimer Hays and Mortimer Feuer, both of New York City, of counsel), for petitioners-appellants.

Cravath, deGersdorff, Swaine & Wood, of New York City (Donald C. Swatland and R. L. Gilpatric, both of New York City, of counsel), for reorganization trustee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from an order in a proceeding under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207) reducing the amount claimed as rent under a lease by the appellants to the above debtor, United Cigar Stores Company. The lease was for a term of 21 years from May 1, 1927, and covered buildings at Nos. 684, 686, and 688 Lexington avenue, New York City. It recited that the tenant was to pay specified monthly rentals and also "as additional rent, all taxes, assessments, water rents, ordinary and extraordinary and other charges on said property as and when hereinafter specified."

The lease provided that the tenant pay "when due all duties, taxes, assessments, water rates, water charges and other charges, extraordinary as well as ordinary, and demands of whatsoever nature and kind as shall during said term be made, charged, assessed, imposed, levied, grow due or payable upon, against, out of, on account of, for or by reason of the said demised premises or any appurtenances thereof; * * *" except inheritance or income taxes which the landlord may be obliged to pay. It also provided that the tenant, at its own expense, should "keep in good order and repair, inside and outside, all buildings, structures, premises, sidewalks, and street gutters now or that may be hereafter erected or placed thereon or appurtenant or in front of said premises, and all equipment thereof, including but not being limited to all glass, skylights, engines, dynamos, boilers, elevators, machinery, pipes, plumbing, wiring, gas and steam and electrical fittings and every other fixture or thing during the term belonging to or

used in connection with the leased premises; it shall from time to time when necessary make replacements of such equipment, at least equal to the original and sufficient for the same service, so that at all times, such buildings, structures, premises and equipment shall be in thorough good order, condition and repair."

The lease provided that the tenant should keep the leased property and equipment insured for the benefit of the landlord, and further (in paragraph "Twenty-second") provided that, if the tenant should fail to pay taxes, assessments, water rates, "or any other charge or payment required to be made and or paid * * * hereunder," the landlord might pay the same, and the tenant on or before the last day of the month during which such expense, expenditure, or payment should have been made or incurred by the landlord, and for which the tenant was responsible under the lease, should pay the landlord "as additional rent for said demised premises, in addition to all other sums of rent payable by virtue of these presents, a sum equal to the amount which shall have been so paid and or incurred by the Landlord in any and all of the cases hereinbefore in this paragraph referred to. * * *"

In paragraph "Twenty-third" the lease provided that, in case of "reentry or of the termination of the lease by summary proceedings or otherwise, whether the premises be relet or not, the Tenant shall remain liable until the time when this lease would have expired but for such termination thereof, for the yearly rent and additional rent reserved herein, less the avails of reletting. * * *"

August 29, 1932, the debtor was adjudicated a bankrupt on its voluntary petition. On September 26, 1932, an order was made authorizing the trustee in bankruptcy to assign to the landlords (the claimants herein) all the interest of the trustee in the lease and also in certain subleases which had been made by the bankrupt, without prejudice, however, to "any right of the landlord to declare the lease in full force and effect and to look to the bankrupt for full payment thereunder." The order recited that it was "intended to preserve every right that the landlord may now or hereafter have against the bankrupt except to release * * * the trustee * * * from liability under said lease."

No assignment of the main lease nor of the subleases was made, and on November 18, 1932, after refusal of the landlords to accept assignments, an order was made to be effective nunc pro tunc as of September 26, 1932, authorizing the trustee in bankruptcy to reject all interest in the lease by mailing a notice of rejection to the landlords, and on November 25 such a letter of rejection was duly mailed rejecting the lease as of September 26, 1932. On January 6, 1933, the landlords obtained an order in summary proceedings instituted in the Municipal Court of the City of New York, evicting the tenants under the subleases. Neither the trustee in bankruptcy, nor the bankrupt, had taken any steps either to cancel the subleases or to evict the subtenants, nor did the latter make any payment of rent to the landlords.

On June 9, 1934, the debtor filed its petition for reorganization pursuant to section 77B which was approved on June 14, 1934. In October, 1934, the landlords filed their proof of claim in which they sought to be allowed loss of rent at the rates reserved in the lease for three years from January 6, 1933, and also $10,916.-17, the estimated cost of repairs and maintenance over the three-year period. The master allowed the three years' rent only from September 26, 1932, and, on the ground that no part of the $10,916.17 was "additional rent" within the meaning of the lease, declined to allow that item.

Claims for loss of rentals may be proved in a proceeding for reorganization under section 77B under the following provisions of subdivision (b) (10) thereof (11 U.S.C.A. § 207 (b) (10):

"In case an executory contract or unexpired lease of real estate shall be rejected pursuant to direction of the judge given in a proceeding instituted under this section, or shall have been rejected by a trustee or receiver in bankruptcy or receiver in equity, in a proceeding pending prior to the institution of a proceeding under this section any person injured by such rejection shall, for all purposes of this section and of the reorganization plan, its acceptance and confirmation, be deemed to be a creditor. The claim of a landlord for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall be treated as a claim ranking on a parity

with debts which would be provable under section 63 (a) of this Act [section 103 (a) of this title], but shall be limited to an amount not to exceed the rent, without acceleration, reserved by said lease for the three years next succeeding the date of surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after the filing of the petition, plus unpaid rent accrued up to such date of surrender or reentry."

The landlords object to the decision of the District Court on the ground: (1) That the statutory three-year period of limitation did not begin to run until January 6, 1933, when the landlords evicted the subtenants and obtained actual possession of the demised premises, whereas it was held to run from September 26, 1932; (2) that the estimated cost of repairs to and maintenance of the demised premises during the three-year period was by the terms of the lease a part of the "rent" and should accordingly have been allowed as such.

The solution to the first objection is to be found in the proper interpretation of the words in section 77B (b) (10) "for the three years next succeeding the date of surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after the filing of the petition."

██ Appellants argue that the rejection of the lease by the trustee did not terminate the lease as between the landlords and the debtor; that under the express terms of section 77B (b) (10) whereby such damages could be proved under the "Twenty-third" paragraph of the lease to the extent of three years succeeding the surrender of the premises the time did not begin to run until the "reentry of the landlord," which was not until January 6, 1933. Such a construction of the clause would permit landlords to extend the date from which the three years would commence indefinitely and at the same time to prove for "unpaid rent accrued up to such date of surrender or reentry." Moreover, landlords holding leases without damage clauses indemnifying them against loss of rent during the term could never safely re-enter, for, by doing so, the lease would be extinguished and any claim for three years' rent under section 77B (b) (10) would be lost. In re United Cigar Stores Company of America (City Bank Farmers' Trust Company), 83 F.(2d) 209 (C. C.A.). Therefore, if appellants' interpretation of the statute be correct, the period of limitation would never begin to run where the lease contained no damage clauses or indemnity covenants. In view of these considerations, it is reasonable to suppose that the words "the date of surrender of the premises to the landlord" refer to the time when the landlord is free to deal with the property as he chooses, and not to a technical surrender such as by the United Cigar Stores to its landlords.

██ The premises were all sublet and the trustee was never in actual possession. When it elected to reject the lease, obtained the order authorizing the rejection, and notified the landlords thereof, it surrendered all its rights in the premises and put the latter in a position where they could dispossess the subtenants and the tenant as well because of its neglect to pay rent under the main lease. It is true that under the strict law of landlord and tenant the lease was not surrendered, but the landlords were placed in control of the situation and there was a "surrender of the premises" within the meaning of section 77B (b) (10). By reason of their equitable lien for rent in default under the main lease, they could collect rents accruing from subtenants in order to satisfy their claims against their tenant. In re United Cigar Stores (Reisenwebers, Inc., v. Irving Trust Co.), 69 F. (2d) 513 (C.C.A.2); Louisville Woolen Mills v. Tapp, 239 F. 463 (C.C.A.6); Otis v. Conway, 114 N.Y. 13, 20 N.E. 628; Haley v. Boston Belting Co., 140 Mass. 73, 2 N.E. 785. Under such circumstances the surrender referred to in section 77B (b) (10) means notification to the landlord of the rejection of the lease authorized by order of the court. Had the trustee, rather than the subtenants, been in occupation, surrender would have meant vacating the premises and turning them over to the landlords. As the trustee was not in possession here, it did everything possible to surrender the premises by giving notice of rejection to the landlords. Although the bankrupt still had a sort of "scintilla juris" in the way of legal title to the lease after rejection by the trustee, we think there was a "surrender of the premises" to the landlords when the trustee empowered them effectively to control the disposition of the property. We

accordingly hold that September 26, 1932, and not January 6, 1933, was the date when the three-year period provided for in section 77B (b) (10) began to run.

The remaining question is whether the cost of repair and maintenance during the three-year period was by the terms of the lease a part of the "rent." Such items are described in it as "additional rent." Paragraph "Twenty-second" provides that "any other charge or payment required to be made and or paid" by the tenant can be paid by the landlords, that the tenant shall thereupon pay them an equivalent amount as "additional rent," and that, in the event of the failure of the' tenant to pay this "additional rent," the landlords "shall have any of the remedies that would be available * * * in the event of the non-payment of the regular and specified rent."

It cannot be doubted that the "regular and specified rent," so called, was fixed with reference to the other burdens assumed by the tenant, as it is reasonable to suppose that the "regular" rent would have been larger if the tenant had not agreed to assume the very substantial obligation of keeping the premises in repair. These expenditures seem to us to have been made rent by agreement of the parties just as truly as were the taxes and water rates, and, so far as they are properly proved, they ought to be allowed as such. But the proof that the expenditures claimed were proper charges was so general that we cannot determine from the record how far the different items justify their allowance. A further hearing should be had as to these items, and evidence should be furnished to establish whether all the items set forth properly come within the categories of reasonable expenditures for maintenance and repairs.

The order of the District Court in so far as it fixed September 26, 1932, as the date from which the three-years' rental was to be computed is affirmed. In so far as it determined that the landlords were not entitled to include expenditures for repairs and maintenance as part of the "rent" allowable under the statute, it is reversed, and the proceeding is remanded, with directions to take such proof in regard to such expenditures as may be necessary and to determine the amount of the claim in accordance with the views expressed in this opinion.