CHATLOS SYSTEMS, INC., Appellant,

v.

Elbert A. KAPLAN, Appellee.

Civ. A. Nos. 92–16–SLR, 92–17–SLR.

United States District Court,
D. Delaware.

Sept. 24, 1992.

James L. Patton, Jr., of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for appellant. Of counsel: Marshall E. Eisenberg, and Lawrence M. Benjamin, of Neal, Gerber & Eisenberg, Chicago, Ill.

Stephen W. Spence, of Phillips, Goldman & Spence, Wilmington, Del., and Sheldon Schachter, and Glenn R. Reiser, of Lum, Hoens, Conant, Danzis & Kleinberg, Roseland, N.J., for appellee.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

### I. INTRODUCTION

This is an appeal from a final order of the Bankruptcy Court for the District of Delaware entered on October 31, 1991. The Court's jurisdiction to entertain this appeal is based on 28 U.S.C. § 158(a) and Bankruptcy Rule 8001(a).

The facts relevant to this appeal are not in dispute. Chatlos Systems, Inc. ("Chat-los"), the-debtor-in-possession, was the tenant under a lease agreement ("the Lease") with Elbert A. Kaplan ("Kaplan") for non-residential premises commonly known as 125 Algonquin Parkway, Whippany, New Jersey ("the Property"). Chatlos entered into a sublease agreement with TX Technologies, Inc. ("TX") for the Property in March, 1988. TX, the subtenant, filed a petition in the Bankruptcy Court for the District of New Jersey on April 2, 1991. Chatlos filed its bankruptcy petition in the Bankruptcy Court for the District of Delaware on April 8, 1991.

On May 29, 1991, Chatlos notified the Delaware Bankruptcy Court that it did not intend to assume the Lease between Chatlos and Kaplan. Pursuant to 11 U.S.C. § 365(d)(4) and Chatlos' notification that it would not assume the Lease, the Bankruptcy Court entered an Order on May 29, 1991, stating that the Lease "will be deemed rejected on June 7, 1991" and ordering Chatlos to surrender the premises to Kaplan.[1] (D.I. 1, Designation D)[2]

Kaplan filed a motion with the Delaware Bankruptcy Court on July 3, 1991, requesting the court to compel Chatlos to comply with that court's May 29 Order directing Chatlos to surrender the Property to Kaplan.[3] Kaplan alleged in his motion that Chatlos failed to surrender the Property to Kaplan, and that Chatlos was liable to Kaplan for payment of administrative rent. Chatlos informed the court that it was not in possession of the Property, that Chatlos sublet the Property to TX and that TX was and continued to be in possession of the Property since before May 29, 1991.

In response to Kaplan's motion, the court ordered Chatlos to deliver "physical posses-

1. The record on appeal indicates that Chatlos improperly failed to inform the Bankruptcy Court that it was not in possession of the Property and that Chatlos' sublessee, TX, in fact had possession thereof at the time Chatlos notified the Bankruptcy Court that it would not assume the Lease.

2. All docket item ("D.I.") references contained in this Memorandum Opinion refer to papers filed in Civil Action No. 92–CV–017.

3. It is alleged in Kaplan's motion papers that "[a]lthough Chatlos obtained [the May 29, 1991] Order by way of motion, no notice of said motion was provided to Kaplan." D.I. 9 at 4. It is not alleged, however, and there is nothing in the record on appeal indicating that Kaplan did not receive timely notice of the Bankruptcy Court's May 29, 1991 Order stating, *inter alia,* that the Lease would be deemed rejected pursuant to § 365(d)(4) as of June 7, 1991. It should be noted also that June 7, 1991, the effective date of rejection of the Lease, was approximately sixty days after the April 8, 1991 filing of Chatlos' bankruptcy petition.

sion of the premises ... without adverse occupancy by either Chatlos or its subtenant" and further directed Chatlos to make back and current payments of administrative rent "until the surrender set forth above occurs." (D.I. 5 at No. 10) Chatlos' appeal seeks review of this Order of the Bankruptcy Court.

## II. STANDARD OF REVIEW

The proper standard of review to be applied by a district court reviewing the rulings of a bankruptcy court turns on the nature of the issues presented on appeal. Factual determinations of the bankruptcy court are entitled to deference and are not reversed unless found to be clearly erroneous. Bankruptcy Rule 8013; *In re Morrisey*, 717 F.2d 100, 104 (3rd Cir.1983). Legal conclusions of the bankruptcy court are subject to plenary review by the district court and are considered *de novo* on appeal. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988). The instant appeal seeks review of certain legal determinations made by the Bankruptcy Court and, therefore, a *de novo* standard of review is appropriate.

## III. DISCUSSION

Section 365(d)(4) of Title 11, United States Code, provides that "if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief ... then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor."

Application of § 365(d)(4) to the case at bar would be relatively straightforward if Chatlos had been in possession of the Property when Chatlos filed its bankruptcy petition and when the Bankruptcy Court entered its May 29, 1991 Order deeming the Lease rejected and directing Chatlos to surrender the Property to Kaplan: Kaplan would have been entitled both to immediate surrender of the premises by Chatlos when the Lease was deemed rejected and to an administrative rent claim for sixty days'

rent (assuming Chatlos surrendered possession of the property to Kaplan sixty days following Chatlos' filing of its bankruptcy petition). *See, e.g., In re U.S. Fax, Inc.*, 114 B.R. 70 (Bankr.E.D.Pa.1990). The difficulty in the instant case, of course, is that Chatlos was not in possession of the property during the relevant periods discussed above and, thus, proper application of § 365(d)(4) to the facts of this case is somewhat unclear.

A number of reported bankruptcy cases, involving largely analogous circumstances to those of the instant case, illustrate the legal principles underlying proper resolution of the issues presented here. In *In re 6177 Realty Associates, Inc.*, 142 B.R. 1017 (Bankr.S.D.Fla.1992), the court addressed the issue of whether a sublessee retains any interest in leased nonresidential property after the debtor-sublessor's underlying lease is deemed rejected pursuant to § 365(d)(4). In resolving this question, the court held as follows:

Rejection of a non-residential lease results in termination of the lease. Once the underlying lease is terminated, leasehold mortgagees or sublessees retain no interest that can be pursued in bankruptcy court or state court.

The surrender remedy specially provided in § 365(d)(4) by Congress embodies a federal policy to ensure that unless extended by the Court, landlords obtain possession of their property within sixty (60) days of the filing if the lease is not assumed. It would be contrary to this policy to allow mortgagees or sublessees whose rights are derived solely from a debtor's interest as direct lessee to continue to tie up the property with litigation in bankruptcy court or in state court.

*In re 6177 Realty Assoc., Inc.*, 142 B.R. 1017, 1019.

The bankruptcy court in *6177 Realty Associates* also found that the principal lessor there was entitled to immediate surrender of the premises "not only by the [lessee] but also by [the sublessee] and any other parties who claim an interest in the property." *Id.* The court found support for its

holding in related caselaw [4] and in the specific language of § 365(d)(4), which provides that "the trustee shall immediately surrender such nonresidential property to the lessor" when the underlying lease is deemed rejected. As to the effect of state law on this issue, the court held that § 365(d)(4) preempts or supersedes any state law right that the sublessee could assert following the underlying lease being deemed rejected.

In another related case, *In re Dial–A–Tire, Inc.*, 78 B.R. 13 (Bankr.W.D.N.Y. 1987), the sublessee, or the party analogous to TX in the case at bar, filed a motion which sought an order requiring the debtor-sublessor to assign its interest in the lease so that the sublessee could deal directly with the landlord and remain at the leased premises under the terms of the primary lease agreement. The landlord cross-moved seeking an order pursuant to § 365(d)(4) finding that the primary lease be deemed rejected. The court initially found that the primary lease at issue there had to be deemed rejected because the "debtor-in-possession took no action within the 60 days allotted to assume or reject the primary lease." *Id.* at 15–16.

As to the effect of rejection of the primary lease on the sublease, the court in *Dial–A–Tire* held as follows:

> [T]he operation of 11 U.S.C. § 365(d)(4) results in the Lease being deemed rejected. Under New York law, a sublease is constitutive of the paramount lease out of which it has been carved. The existence of the sublease depends on the continuing viability of the paramount lease. Rasch, New York Landlord & Tenant—Summary Proceedings [2d Ed.] §§ 234, 246.
>
> Accordingly, rejection of the Lease in this case must result in the Sublease being deemed rejected as well. Having been rejected, the Sublease cannot now be assumed or assigned. 11 U.S.C. § 365(f)(2)(A).

*In re Dial–A–Tire*, 78 B.R. at 16. This much of the *Dial–A–Tire* opinion appears to accord with the court's holding in *6177 Realty Associates.*

As to the consequence of rejection on the primary lease and the sublease, the holding of the court in the *Dial–A–Tire* case diverges from the court's decision in *6177 Realty Associates* as indicated by the following language quoted from the *Dial–A–Tire* case:

> While the operation of 11 U.S.C. § 365(d)(4) produces a common fate for both the Lease and Sublease, i.e. rejection, the consequence of rejection in each case differs.
>
> The Bankruptcy Code provides specifically that upon rejection of a lease by a debtor, qua lessee, non-residential real property must be immediately surrendered to the lessor. 11 U.S.C. § 365(d)(4). In contrast, 11 U.S.C. § 365(h)(1) provides that upon rejection of a lease of non-residential real property by a debtor, qua lessor, "the lessee may remain in possession for the balance of the lease term" to the extent permitted "under applicable nonbankruptcy law." 11 U.S.C. § 365(h)(1). The application of these subsections in this case produces the anomalous result of the Debtor being obligated to surrender the Premises, but [the sublessee] not necessarily having to. The matter is resolved by resort to forum law. *Thus, the dual rejection which occurred here will leave [the landlord] and [the sublessee] to vie for possession of the Premises according to New York Law. In re Elmhurst Transmission Corp.*, 60 B.R. 9, 10 (Bkrtcy. E.D.N.Y.1986).

*In re Dial–A–Tire*, 78 B.R. at 16 (emphasis supplied).

The court in *Dial–A–Tire* further held that resolution of the dispute between the landlord and the sublessee, and the respective rights of those parties with respect to each other, should be addressed in an appropriate state court proceeding:

---

**4.** *See In re 6177 Realty Associates, inc.*, 142 B.R. 1017, 1019 (citing, *inter alia, Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077 (9th Cir. 1989); *In re Giles Associates, Ltd.*, 92 B.R. 695 (Bankr.W.D.Tex.1988); *In re Bernard*, 69 B.R. 13 (Bankr.D.Haw.1986)).

That matter is not properly before the Court. Nor could it be, since "federal courts acting in the bankruptcy context should deal with state law only to the extent such is *necessarily* and directly implicated by the bankruptcy issues. (emphasis in original). *In re Nanodata Computer Corp.*, 74 B.R. 766, 771 (W.D.N.Y.1987). Here, both *the Lease and Sublease have been deemed rejected, leaving the bankruptcy estate with no meaningful interest in the ultimate disposition of the Premises.* Accordingly, the Court should refrain from deciding a property dispute between creditors whose resolution involves purely state law questions having no necessary relation to the bankruptcy proceeding. *In re Dial–A–Tire*, 78 B.R. at 16 (emphasis supplied).

A third reported decision, *In re United Cigar Stores Co.*, 86 F.2d 629 (2d Cir.1936), *cert. den'd*, 300 U.S. 679, 57 S.Ct. 671, 81 L.Ed. 883 (1937), also is instructive of the principles relevant to the instant controversy, notwithstanding that the court interpreted and applied a bankruptcy statute other than the one relevant here. The applicability and relevance of the Second Circuit's analysis to this § 365(d)(4) issue is self-explanatory and apparent from the language quoted here:

> When [the debtor-lessee] elected to reject the lease, obtained the order authorizing the rejection, and notified the landlords thereof, it surrendered all its rights in the premises and put the latter in a position where they could dispossess the subtenants and the tenant as well because of its neglect to pay rent under the main lease. It is true that under the strict law of landlord and tenant the lease was not surrendered, but the landlords were placed in control of the situation and there was a "surrender of the premises" within the meaning of section 77B(b)(10). By reason of their equitable lien for rent in default under the main lease, they could collect rents accruing from subtenants in order to satisfy their claims against their tenant. *In re United Cigar Stores* (Reisenwebers, Inc., v. Irving Trust Co.), 69 F.(2d) 513 (C.C.A. 2);

*Louisville Woolen Mills v. Tapp*, 239 F. 463 (C.C.A. 6); *Otis v. Conway*, 114 N.Y. 13, 20 N.E. 628; *Haley v. Boston Belting Co.*, 140 Mass. 73, 2 N.E. 785. Under such circumstances the surrender referred to in section 77B(b)(10) means notification to the landlord of the rejection of the lease authorized by order of the court. *Had the trustee, rather than the subtenants, been in occupation, surrender would have meant vacating the premises and turning them over to the landlords. As the trustee was not in possession here, it did everything possible to surrender the premises by giving notice of rejection to the landlords.*

*In re United Cigar Stores Co.*, 86 F.2d at 632 (emphasis supplied).

 These authorities demonstrate, and this Court so holds, that when a lease is deemed rejected pursuant to § 365(d)(4), any subleases under that primary lease must also be deemed rejected since the sublessee's rights in the property extinguish with those of the sublessor. This Court specifically finds that the Lease between Chatlos and Kaplan is deemed rejected as of June 7, 1991 pursuant to the Bankruptcy Court's May 29, 1991 Order. The Court further finds that Chatlos surrendered the Property to Kaplan and that the primary lease was terminated when Kaplan received notice of the Bankruptcy Court's May 29, 1991 Order, which appears to have occurred by the June 7, 1991 rejection date. After Kaplan received notice of Chatlos' rejection of the Lease, Chatlos had done everything possible to surrender the premises to Kaplan. *See In re United Cigar Stores Co.*, 86 F.2d at 632. Following rejection of the Lease, Chatlos had no statutory, contractual or possessory rights in the Property and, therefore, Chatlos had no basis for an eviction action against TX.

 Whether Kaplan should have looked to the courts of New Jersey or to a federal bankruptcy court to regain possession of the Property from TX is a question which must await resolution until another day, but it is clear to this Court that Kaplan should have proceeded directly against TX

in his efforts to obtain possession of the Property. Since Chatlos no longer had any interest in the Property during the period following June 7, 1991, payment of administrative rent for the period after that date is not appropriate. As Chatlos had no rights in the Property and did not receive any benefit therefrom, an award of administrative rent for said period is improper. *See In re Myrtle Beach Golf & Yacht Club*, 118 B.R. 406 (Bankr.D.S.C.1990) (rejection of a lease does not give rise to a claim for administrative expense if there is no benefit to the estate).

It appears that under applicable New Jersey law, TX became a tenant at sufferance as to Kaplan after June 7, 1991 and, as such, became liable to Kaplan for the reasonable value of the use and occupation of the Property. *See Xerox Corp. v. Listmark Computer Systems*, 142 N.J.Super. 232, 361 A.2d 81, 85–86 (1976). Kaplan's claim for unpaid rent accrued after June 7, 1991 appears to rest in the New Jersey courts in an appropriate action against TX.

It further appears, and Chatlos apparently concedes this point, that Chatlos is liable to Kaplan for approximately sixty days administrative rent for the period from April 8, 1991 to June 7, 1991. Additionally, Chatlos must pay to Kaplan any funds paid to Chatlos by TX as rental payments, including approximately $81,000 of said funds to which the parties referred during oral argument before this Court on May 29, 1992. (D.I. 20 at 11–12)

## IV. CONCLUSION

Since the Bankruptcy Court's October 31, 1991 Order, requiring Chatlos to evict TX from the Property and then surrender the premises to Kaplan and further requiring Chatlos to pay administrative rent, is inconsistent with relevant legal authority, said order will be vacated and the case will be remanded for further proceedings consistent with this Memorandum Opinion.

An Order consistent with this Memorandum Opinion shall issue.