**In re KMART CORPORATION, et al., Debtors.**

No. 02 B 02474.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Oct. 23, 2002.

Joseph D. Frank, Micah R. Krohn, Freeborn & Peters, Chicago, IL, for 4th Leaf, LLC.

William H. Wilhoit, Wilhoit Law Office, Grayson, KY, Deborah L. Thorne, Barnes

& Thornburg, Chicago, IL, for Farmers Hardware Co.

John Wm. Butler, J. Eric Ivester, Mark A. McDermott, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Kmart Corp, et al.

## MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

This matter comes before the Court on the Motion of 4th Leaf, L.L.C. ("4th Leaf") to Compel Surrender of Property. 4th Leaf relies upon section 105(a) of title 11 of the United States Code (the "Code") as the statutory predicate for relief. As discussed in detail later, 4th Leaf leased a store located in Kentucky to one of the debtors herein, Kmart Corporation ("Kmart"), pursuant to a master lease. Kmart subleased the store to Farmers Hardware Company ("Farmers"). The Court approved Kmart's rejection of the master lease and sublease shortly after Kmart filed its bankruptcy case.

In its motion, 4th Leaf seeks the following relief: (i) the entry of an order declaring that the master and subleases are void as they were terminated by the rejection; (ii) the entry of a mandatory injunction requiring Farmers to vacate the subject property; and (iii) the award of a money judgment in favor of 4th Leaf and against Farmers in an undetermined amount for unpaid rent.

Farmers requests that this Court dismiss the motion for lack of subject matter jurisdiction. Farmers argues that this Court does not have "related to" jurisdiction over this dispute between two non-debtor third party entities because the resolution of their dispute has no impact upon the bankruptcy estate of Kmart. Kmart agrees with this contention.

Farmers alternatively argues that even if the Court did have "related to" jurisdiction, that the Rooker–Feldman doctrine bars the Court from deciding whether the master and subleases are void as that issue has already been decided by a Kentucky court in litigation between Farmers and 4th Leaf.

Finally, Farmers argues that if the Court has "related to" jurisdiction and Rooker–Feldman doctrine is not a bar, that the Court should abstain from hearing this matter pursuant to section 1334(c) of title 28 of the United States Code.

 No one raised the issue of whether 4th Leaf's request for declaratory and injunctive relief requires the filing of an adversary complaint. See Fed. R. Bankr.P. 7001(7) & (9). However, the failure to bring an adversary complaint is not a jurisdictional defect, and the parties can waive the requirement. In re Pence, 905 F.2d 1107, 1109 (7th Cir.1990). Waiver may occur when a party fails to object, no prejudice results from the failure to bring an adversary proceeding, and the parties are cognizant of and have the opportunity to address the issues decided by the court. See In re Zolner, 249 B.R. 287, 292 (N.D.Ill.2000); In re Enfolinc, Inc., 233 B.R. 351, 354 (Bankr.E.D.Va.1999). These conditions have been met in this instance, and the Court will proceed to decide the matter.[1]

## I.

## BACKGROUND

### A. The Master Lease and Sublease.

Kmart and 37 of its affiliates filed these chapter 11 bankruptcy cases on January

---

1. Fed.R.Bankr.P. 7012(b)(incorporating Fed. R.Civ.P. 12(b)(1)), is hereby made applicable to this contested matter in accordance with Fed.R.Bankr.P. 9014.

22, 2002 (the "Petition Date"). Prior to the Petition Date, 4th Leaf's predecessor in interest, as lessor, and Kmart, as lessee, entered into a written lease for a certain parcel of real property located in Grayson, Kentucky, for a term of 25 years commencing on October 3, 1980 (the "Master Lease"). The property was improved with a retail store (the "Store"). Kmart, as sublessor, and Farmers, as sublessee, entered into a sublease of the Store dated July 3, 1992, with a scheduled termination date of May 31, 2006 (the "Sublease"). Farmers operates a retail hardware business in the Store.

On January 25, 2002, this Court entered an order approving Kmart's rejection of the Master Lease and Sublease under section 365(a) of the Code, effective as of January 22, 2002, and February 28, 2002, respectively. Kmart surrendered possession of the Store for purposes of Section 365(d)(4) of the Code by sending 4th Leaf a written notice that Kmart had vacated and was tendering possession of the Store to 4th Leaf.

Prior to the rejection of the Sublease, Farmers notified 4th Leaf that it intended to comply with all obligations under both the Master Lease and Sublease. On March 1, 2002, Farmers paid 4th Leaf the monthly rental amount due under the Sublease. 4th Leaf sent Farmers a notice of termination of the Master Lease and Sublease on March 11, 2002 and in the notice indicated that it would take action to evict Farmers from the Store. Farmers refused and continues to refuse to vacate the Store.

**B.** *The Kentucky Court Litigation Between 4th Leaf and Farmers.*

Sometime prior to August 2000, 4th Leaf desired to construct three bridges connecting the property upon which the Store is situated with an adjacent commercial development also owned by 4th Leaf. Farmers objected to this plan and on August 16, 2000, Farmers filed a complaint in the Commonwealth of Kentucky, Carter Circuit Court (the "Kentucky Court") against 4th Leaf, seeking *inter alia* to block the construction of the bridges (the "Kentucky Lawsuit"). Farmers argued that certain provisions of the Master Lease and Sublease prevented 4th Leaf from constructing the bridges. Kmart was initially named as a defendant, but on January 30, 2002, the Kentucky Court issued an agreed order dismissing Kmart as a party defendant.

On March 7, 2002, a date after Kmart rejected the Master Lease and Sublease, Farmers filed a motion for summary judgment with the Kentucky Court. On March 21, 2002, 4th Leaf filed a cross-motion for partial summary judgment. In its cross-motion, 4th Leaf argued that Farmers could not rely on the terms of the Master Lease and Sublease to block the construction of the bridges, because the leases were terminated by virtue of Kmart's rejection of them in the bankruptcy case.

On March 27, 2002, the Kentucky Court entered an order (the "Kentucky Court Order") awarding partial summary judgment to Farmers and directing the sheriff to close access to the bridges and stating, "All remaining issues regarding monetary damages shall be determined by a jury at a later time." [2] 4th Leaf subsequently filed a "Motion to Alter or Amend" the Kentucky Court Order with the Kentucky Court, which as of this date, has not been ruled on.

---

**2.** Apparently, sometime between the filing of the Farmers complaint and the entry of the Kentucky Court Order, the bridges were built.

On May 8, 2002, 4th Leaf filed this motion, seeking, among other relief, an order declaring that the Master Lease and Sublease were terminated and compelling Farmers to vacate the Store. Farmers and Kmart filed responses, 4th Leaf filed a reply, Farmers filed a sur-reply, and the matter was taken under advisement.

## II.

### DISCUSSION

#### A. Dismissal for Lack of Subject Matter Jurisdiction

Farmers' first argument against 4th Leaf's motion is that this Court lacks subject matter jurisdiction over the dispute between 4th Leaf and Farmers.

"When a court dismisses an action for lack of subject matter jurisdiction, that court must accept as true all well-pleaded factual allegations and must draw all reasonable inferences in favor of the plaintiff." *Remer v. Burlington Area School Dist.,* 205 F.3d 990, 996 (7th Cir.2000). In addition to the allegations of the complaint, it may consider pertinent evidence the parties have provided outside the pleadings. *See id. Harris v. New York State Dept. of Health,* 202 F.Supp.2d 143, 147 (S.D.N.Y. 2002). Farmers argues that this Court does not have "related to" jurisdiction over its disputes with 4th Leaf, and even if the Court did, the *Rooker–Feldman* doctrine bars the Court from deciding the dispute.

#### (i) Does the Court Have "Related to" Jurisdiction Over this Dispute?

■ The parties devote a lot of attention to the issue of whether their dispute is core or non-core under 28 U.S.C. § 157(b). The Court, however, must take one step back to determine whether subject matter jurisdiction exists before getting to the core/non-core issue. As noted by the court in *In re Foundation For New Era Philanthropy,*

> Usually, for purposes of determining subject matter jurisdiction, the classification issue of core versus non-core is immaterial. So long as the proceeding is "related" to the bankruptcy case, the categorization of core or non-core only affects a bankruptcy court's power to enter a final judgment without the consent of the parties. It does not affect the bankruptcy court's power to hear the dispute.

201 B.R. 382, 387 (Bankr.E.D.Pa.1996) *citations omitted.*

■ Accordingly, for the Court to consider the merits of this dispute between 4th Leaf and Farmers, it must first determine whether this is a proceeding that is at least "related to a case under title 11." 28 U.S.C. §§ 1334(b) & 157(a), (c). "A case is 'related to' a bankruptcy when the dispute 'affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors.'" *In re Memorial Estates, Inc.,* 950 F.2d 1364, 1368 (7th Cir.1991), *cert. denied,* 504 U.S. 986, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992); *see In re Edwards,* 962 F.2d 641, 643 (7th Cir.1992); *In re Heath,* 198 B.R. 298, 302 (S.D.Ind.1996), *aff'd* 115 F.3d 521 (7th Cir.1997). Even proceedings that allegedly fall within the Court's core jurisdiction must meet this most basic test. *See Found. for New Era Philanthropy,* 201 B.R. at 388–90; *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 190 (5th Cir.1990). To be "related to" a bankruptcy case, litigation between non-debtor third parties need not concern rights to property belonging to the debtor or the bankruptcy estate. *See Edwards,* 514 U.S. at 308–10 & notes 5 & 6, 115 S.Ct. 1185; *Fisher v. Apostolou,* 155 F.3d 876, 882 (7th Cir.1998). Particularly in chapter 11 bankruptcies, courts have recognized the

expansive reach of a federal court's "related to" jurisdiction. *See Celotex Corp. v. Edwards,* 514 U.S. 300, 310, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *Su–Ra Enter. Inc. v. Barnett Bank of South Florida, N.A.,* 142 B.R. 502, 506 (S.D.Fla.1992).

4th Leaf argues that the bankruptcy estate will be impacted by its potential administrative claim for "holdover tenancy" rent, because although the Master Lease and Sublease have allegedly terminated, Kmart has in effect not vacated the Store. Presumably, every day that Farmers stays in the Store, the administrative claim grows larger and thus diminishes the allocation of property among creditors. As such, "related to" jurisdiction is implicated.

█ The Court rejects 4th Leaf's argument for two reasons. First, the bankruptcy estate is only liable for holdover rent as an administrative claim when the debtor continues to receive the benefit of physically occupying the premises after the rejection date. *See Chatlos Systems, Inc. v. Kaplan,* 147 B.R. 96, 101 (D.Del. 1992), *aff'd* 998 F.2d 1005 (3rd Cir.1993); *In re Sanborn, Inc.,* 181 B.R. 683, 690 (Bankr.D.Mass.1995); *In re Bio–Med Laboratories,* 131 B.R. 72, 75 (Bankr.N.D.Ohio 1991); *In re Trak Auto Corp.,* 277 B.R. 655, 666–67 (Bankr.E.D.Va.2002). Unlike the period before the rejection of a nonresidential lease, the period after the rejection date is governed by § 503(b)(1), which only permits claim allowance for "the actual, necessary costs and expenses of preserving the estate." *See* 11 U.S.C. § 365(d)(3); *In re Dawson,* 162 B.R. 329, 331, 333 (Bankr.D.Kan.1993); *In re Cardinal Industries, Inc.,* 109 B.R. 738, 741–42 (Bankr.S.D.Ohio 1989); *In re Episode USA, Inc.,* 202 B.R. 691, 696 (Bankr. S.D.N.Y.1996). Here, Kmart receives no such benefit, and its estate cannot be liable

for an administrative claim based on Farmers' continuing possession.

█ Second, as an intermediary lessee/sublessor with no actual possession, Kmart's rejection notification to both the master lessor (4th Leaf) and the sublessee (Farmers) fulfilled its statutory obligation under section 365(d)(4) of the Code to "surrender" the leased property. *See Chatlos,* 147 B.R. at 100–01. Kmart need not proceed to evict or physically remove Farmers to fulfill its duty. *Id.* Consequently, 4th Leaf cannot sustain its position for "related to" jurisdiction based on a holdover-rent argument.

For its part, Farmers asserts that the outcome of this dispute will have no bearing on the size or distribution of Kmart's bankruptcy estate, because it is only a state-law dispute between two third parties. The Court disagrees with Farmers as well. The resolution of the dispute between Farmers and 4th Leaf could impact the bankruptcy estate by affecting the size of each one's allowable claim against Kmart. To explain, when Kmart rejected the two leases, the decision constituted a "breach" giving rise to two prepetition contract claims against the bankruptcy estate—one in favor of Farmers and one in favor of 4th Leaf. *See* 11 U.S.C. § 365(a), (b), (g). The damages flowing from the breach determines the amount of the claim. To assess the damages one would look to state law.

After rejection, the contractual provisions of the leases and applicable state law determine whether the leases are executory and enforceable, whether the debtor's breach is a "material" one, and what rights and remedies are available to the lessor and sublessee. *See In re Highland Superstores, Inc.,* 154 F.3d 573, 576, 579–80 (6th Cir.1998); *In re Lavigne,* 114 F.3d 379, 387 (2d Cir.1997); *In re Park,* 275 B.R. 253, 256–57 & n. 7 (Bankr.E.D.Va.2002);

*In re Beck,* 272 B.R. 112, 121 & n. 19 (Bankr.E.D.Pa.2002); *In re Yasin,* 179 B.R. 43, 50 (Bankr.S.D.N.Y.1995); *In re Walnut Assocs.,* 145 B.R. 489, 494–95 (Bankr.E.D.Pa.1992).

On the face of it, the size of 4th Leaf's claim in this case depends on how a court interprets paragraph 25 of the Master Lease under Kentucky landlord-tenant law.[3]

Paragraph 25 of the Master Lease provides in pertinent part as follows:

> If a petition in bankruptcy shall be filed by Tenant …, then Landlord may terminate this lease by giving notice to Tenant of its intention so to do; provided, however, neither bankruptcy [nor] insolvency … shall affect this lease or permit its termination *so long as the covenants on the part of Tenant to be performed shall be performed by Tenant or someone claiming under it.*

(emphasis supplied).

There are at least two different interpretations of Kentucky law that this Court sees—one resulting in a relatively large rejection breach claim, the other in a nominal claim against the estate.

Under one scenario, a court could find that Kmart's rejections of the Master Lease and Sublease were material, terminating breaches entitling 4th Leaf to an eviction order against Farmers. In such a case, 4th Leaf's allowed claim in bankruptcy would be the lesser of (1) its total, actual contractual damages computed with reference to any state-law mitigation requirements or (2) the amount of rent reserved under § 502(b)(6) for the one year[4] following the Petition Date, computed without reference to mitigation requirements. *See In re Fifth Avenue Jewelers, Inc.,* 203 B.R. 372, 376–77, 381 (Bankr. W.D.Pa.1996); *Episode USA,* 202 B.R. at 696; *In re Iron–Oak Supply Corp.,* 169 B.R. 414, 419–20 (Bankr.E.D.Cal.1994); *In re Financial News Network, Inc.,* 149 B.R. 348, 351–53 (Bankr.S.D.N.Y.1993); *In re Bob's Sea Ray Boats, Inc.,* 143 B.R. 229, 231–32 (Bankr.D.N.D.1992); *In re Atlantic Container Corp.,* 133 B.R. 980, 989–90 (Bankr.N.D.Ill.1991); *In re Monetary Group,* 91 B.R. 138, 143 note 4 (M.D.Fla. 1988). Under Kentucky law, lessors of real property are not required to mitigate damages when the lessee has abandoned his lease rights before the lease term has expired. *See In re Dant & Dant of Kentucky,* 39 F.Supp. 753, 758 (D.Ky.1941), *aff'd* 125 F.2d 108 (6th Cir.1941); *Dulworth v. Hyman,* 246 S.W.2d 993, 996 (Ky. 1952); *Moore v. Rogers,* 240 Ky. 743, 43 S.W.2d 31, 32 (1931); *Superior Woolen Co. Tailors v. M. Samuels & Co.,* 219 Ky. 539, 293 S.W. 1078, 1079 (1927); *Abraham v. Gheens,* 205 Ky. 289, 265 S.W. 778, 780 (1924). Furthermore, 4th Leaf's total actual damages attributable to the remainder of the 25–year term could be so high that its bankruptcy claim would be capped at the maximum amount reserved under the Master Lease for the one year following the petition date. Farmers would also presumably have a damages claim, though

---

3. The Court should point out that the parties are not concerned with claims adjudication at this point. Rather, 4th Leaf is seeking the entry of declaratory relief in order to pave the way to evict Farmers from the Store. The discussion that follows as to the claims Farmers and 4th Leaf may be able to assert against the estate is solely given to illustrate that this Court has "related to" jurisdiction over the dispute as to whether the Master Lease and Sublease were terminated by virtue of the rejection.

4. The remaining term on the Master Lease following the order for relief was approximately 52 months, and one year is greater than fifteen percent of 52 months. *See* 11 U.S.C. § 502(b)(6).

not one capped by § 502(b)(6),[5] for the remainder of the time it was entitled to physical possession of the premises.

On the other hand, a court could find that Paragraph 25 of the Master Lease is a pre-arranged, express agreement by 4th Leaf to "assent" to Kmart's "surrender" of the Master Lease as long as a subtenant maintains rent payments, thereby relieving Kmart of its duty to pay any rent for the balance of the Master Lease under Kentucky law. *See Moore v. Rogers,* 43 S.W.2d at 32; *Motch's Adm'r v. Portner,* 237 Ky. 25, 34 S.W.2d 744, 745 (1931). *See generally Iron–Oak Supply,* 169 B.R. at 418–19. Alternatively, if, under Kentucky law, a court construes Kmart's rejection as a "breach of covenant" and 4th Leaf's eviction of Farmers as a "re-entry by the lessor," 4th Leaf would then have an obligation to minimize damages, *see Jordon v. Nickell,* 253 S.W.2d 237, 238 (Ky.1952), and its claim against Kmart would be reduced by the payments from Farmers that would have satisfied Kmart's liability, *see generally Highland Superstores,* 154 F.3d at 577; *Fifth Avenue Jewelers,* 203 B.R. at 376; *Bob's Sea Ray Boats,* 143 B.R. at 231–32; *Atlantic Container,* 133 B.R. at 990. In either of these latter situations, 4th Leaf's actual damages claim against the bankruptcy estate would be nominal or nonexistent, and it would not be entitled to an allowed claim capped at the one-year rent amount. Additionally, any claim that Farmers would have against Kmart for its deemed prepetition breach of the Sublease would be greatly reduced by a court decision permitting it to retain physical possession of the premises.

Therefore, the size of 4th Leaf's and Farmers' claims against Kmart will depend on whether a court decides the lease was terminated as a result of the rejection. As such, the resolution impacts the amount of assets left over for distribution to other unsecured creditors. Consequently, this Court has "related to" jurisdiction over this matter even if the asset at issue is one that the estate abandoned. *See In re Xonics,* 813 F.2d 127, 131–32 (7th Cir.1987); *cf. Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 161–62 (7th Cir.1994). Therefore, this Court, by referral, would have *original but nonexclusive* jurisdiction over this matter, provided that no other jurisdictional bar stands in the way. 28 U.S.C. § 1334(b).

### (ii) *Does the Rooker–Feldman Doctrine Apply as a Bar?*

Farmers asserts that another bar to this Court's subject matter jurisdiction exists by virtue of the *Rooker–Feldman* doctrine. This additional restriction on the federal judiciary's power stems from the fact that sections 1331 and 1334 of U.S.Code Title 28 grant original—but not appellate—jurisdiction to district courts, while 28 U.S.C. § 1257(a) grants only the U.S. Supreme Court the authority to review the judgment of a state's highest court. *See Brown & Root v. Breckenridge,* 211 F.3d 194, 198, 199 (4th Cir.2000); *Schmitt v. Schmitt,* 165 F.Supp.2d 789, 794 (N.D.Ill.2001). The doctrine has been extended to prohibit review of judgments issued by lower state courts, as well. *See Breckenridge,* 211 F.3d at 199; *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996); *Texaco v. Pennzoil Co.,* 784 F.2d 1133, 1142 (2d Cir.1986), *rev'd on other grounds,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Furthermore, when a state trial court proceeds to enter an order or judgment in a matter over which it has concurrent subject matter jurisdiction, the doctrine prohibits a federal court from setting aside or

---

**5.** Section 502(b)(6) only limits the "claim of a *lessor* for damages."

otherwise reviewing the state court decision when the state-court determination is inextricably intertwined with the injury alleged in the federal-court lawsuit. *See Remer v. Burlington Area Sch. Dist.*, 205 F.3d at 996; *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554–57 (7th Cir.1999).

■■■■■ A state court decision is inextricably intertwined when the federal plaintiff's success depends on a federal court holding that the state court erroneously decided the issues before it, but it is not so intertwined when he asserts an independent claim for which the state court proceeding failed to provide redress.[6] *See Centres v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir.1998); *Breckenridge*, 211 F.3d at 198, 200–01; *Brokaw v. Weaver*, 305 F.3d 660, 663–64 (7th Cir. 2002). Thus, even if a state court improperly construes a federal statute or the U.S. Constitution, the losing litigant must appeal adverse rulings to higher levels of the state court system and ultimately to the U.S. Supreme Court. *See Centres*, 148 F.3d at 701–02.

In this case, the Kentucky Court is a court with general jurisdiction over Kentucky contract and property lawsuits, and 28 U.S.C. § 1334(b) did not otherwise prohibit it from exercising jurisdiction over a proceeding "related to" a case under Title 11, because the Bankruptcy Court's referred jurisdiction is *nonexclusive*. Furthermore, when the Kentucky Court granted partial summary judgment in favor of Farmers rejecting 4th Leaf's "cancellation" argument and implicitly finding thereby that the leases were not terminated, that ruling divested this Court of its ability to consider the merits of the dispute, even if the state court based its

decision on an erroneous reading of state or federal law. If this Court were to revisit 4th Leaf's "cancellation" defense, it would in effect be "reviewing" the Kentucky Court's decision to close access to the three bridges. 4th Leaf's success in its request to have this Court declare the leases void, depends on this Court deciding that the Kentucky Court erroneously decided the identical issues before it.

4th Leaf raises two issues concerning application of the *Rooker–Feldman* doctrine to this matter. First, 4th Leaf contends that the order entered by the Kentucky Court was in violation of the automatic stay, so it was void, making the *Rooker–Feldman* doctrine inapplicable. 4th Leaf also argues that the Kentucky Court order was interlocutory, and the *Rooker–Feldman* doctrine only applies to final state court judgments. The Court will address these sub-issues in order.

#### (a) *Did the Entry of the Kentucky Court Order Violate the Stay?*

■■■■ 4th Leaf notes that courts have held that when state-court litigation violates the automatic stay, the proceedings are deemed null and void *ab initio*, and the *Rooker–Feldman* doctrine does not bar a review of the issues presented in such litigation. *See In re Dunbar*, 245 F.3d 1058, 1063 (9th Cir.2001). 4th Leaf further contends that Section 362(a)(3) of the Code specifically barred the Kentucky Court from affecting the enforceability of the Master Lease and Sublease by staying "any act to ... exercise control over property of the estate," which in this case allegedly included Kmart's rights under the leases. The argument is unfounded, though, because Section 362(c)(1) of the Code additionally provides that "the stay

---

**6.** Even if the state court judgment is not inextricably intertwined, the state-law doctrines of issue and claim preclusion, made applicable

to federal courts by 28 U.S.C. § 1738, may restrict the subsequent lawsuit in federal court. *See Centres*, 148 F.3d at 702.

of an act against property of the estate under subsection (a) ... continues until such property is no longer property of the estate." The weight of authority holds that when a trustee rejects an executory contract or unexpired lease pursuant to section 365(d) of the Code, the bankruptcy estate effectively abandons its interest in it. *See In re Austin Development Co.,* 19 F.3d 1077, 1084 (5th Cir.1994), *cert. denied,* 513 U.S. 874, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994); *In re Orion Pictures Corp.,* 4 F.3d 1095, 1098 (2d Cir.1993), *cert. dismissed,* 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994); *In re Knight,* 211 B.R. 747, 750 (Bankr.D.Or.1997); *All Blacks B.V. v. Gruntruck,* 199 B.R. 970, 973–74 (W.D.Wash.1996); *In re Prestige Point,* 113 B.R. 643, 650–52 (Bankr. C.D.Cal.1990), *rev'd,* 130 B.R. 362 (9th Cir. 1991), *reinstated,* 985 F.2d 573 (9th Cir. 1993); *In re Reed,* 94 B.R. 48, 52 (E.D.Pa. 1988); *In re Damianopoulos,* 93 B.R. 3, 6 (Bankr.N.D.N.Y.1988); *In re Zip Enterprises, Inc.,* 28 B.R. 223, 225 (Bankr. M.D.Ala.1983). The Kentucky Court Order, furthermore, was not impaired by the automatic stay, because Kmart had previously rejected the Master Lease and Sublease on January 22, 2002, and February 28, 2002, respectively. *Compare Chatlos,* 147 B.R. at 100–01 (stating, without mentioning the stay, that after trustee's rejection, lessor should proceed against sublessee in state court under state law); *In re Stalter & Co.,* 99 B.R. 327, 328–29 (E.D.La. 1989) (same).

**(b)** *Application of Rooker–Feldman Doctrine to Interlocutory Orders.*

▉▉▉ 4th Leaf contends that the *Rooker–Feldman* doctrine does not bar a

federal court's review of state-court interlocutory orders. 4th Leaf contends that the Kentucky Court Order is interlocutory by virtue of being only a partial summary judgment order and being stayed by 4th Leaf's Motion to Alter or Amend. 4th Leaf correctly notes that under Kentucky law, a motion to alter or amend a judgment converts the original judgment into an interlocutory decision until the state court judge rules on the motion to alter or amend. *See Kentucky Farm Bureau Insurance Co. v. Gearhart,* 853 S.W.2d 907, 910 (Ky.Ct.App.1993); *Personnel Board v. Heck,* 725 S.W.2d 13, 18 (Ky.Ct.App.1986).

The U.S. Courts of Appeal that have ruled on the issue are split on whether the *Rooker–Feldman* doctrine shields the interlocutory rulings of state trial courts in addition to their final judgments. One school of thought concludes that the doctrine also applies to state court interlocutory rulings. *See Pennzoil Co. v. Texaco,* 481 U.S. 1, 23–27, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J. concurring); *Breckenridge,* 211 F.3d 194, 198, 199 (4th Cir.2000); *Campbell v. Greisberger,* 80 F.3d 703, 706–07 (2d Cir.1996); *Charchenko v. City of Stillwater,* 47 F.3d 981, 983 n. 1 (8th Cir.1995); *Port Authority Police Benev. Ass'n v. Port Authority of New York,* 973 F.2d 169, 177–78 (3d Cir.1992); *Keene Corp. v. Cass,* 908 F.2d 293, 297 (8th Cir.1990). Another concludes that the doctrine only applies to final judgments of state trial courts.[7] *Cruz v. Melecio,* 204 F.3d 14, 21 n. 5 (1st Cir.2000); *Davis v. Bayless,* 70 F.3d 367, 376 (5th Cir.1995); *Gauthier v. Continental Diving Services, Inc.,* 831 F.2d 559, 561 (5th Cir.1987).

---

**7.** In *Cruz,* the Puerto Rico Court of First Instance actually granted the defendants' summary judgment motion, issuing a complete and final judgment on the merits, but the First Circuit declined to apply the *Rooker–Feldman* doctrine as a result of an anomaly in

Puerto Rico law. This anomaly does not cloak a lower court judgment with preclusive effect until the lawsuit reaches appellate finality. *See Cruz,* 204 F.3d at 18, 20–21; *contra In re Audre, Inc.,* 216 B.R. 19, 29 (9th Cir. BAP 1997).

The *Breckenridge* line of cases expresses a general concern for the basic policy underlying *Rooker–Feldman* in support of the holding that *Rooker–Feldman* does bar a federal court's review of state court interlocutory orders. The policy is to prevent litigants from circumventing state appellate review before direct U.S. Supreme Court review. *See Port Authority,* 973 F.2d at 178; *Keene,* 908 F.2d at 297. Allowing litigants to seek federal review of interlocutory state rulings in federal courts of original jurisdiction offends this policy.

On the other hand, the *Cruz* line of cases reasons that the usurpation of state appellate authority is not implicated if the state court decision cannot be appealed anyway by virtue of being interlocutory. Moreover, state law does not generally require a state court to give an interlocutory ruling from a different state court any preclusive effect whatsoever, so a federal court should not be required to award the same ruling any greater respect. *See Cruz,* 204 F.3d at 21 n. 5; *Davis,* 70 F.3d at 376; *Gauthier,* 831 F.2d at 561; *see also In re Benalcazar,* 283 B.R. 514 (Bankr. N.D.Ill.2002).

In support of the *Cruz* line of cases, 4th Leaf contends that it is the rule in the Seventh Circuit that *Rooker–Feldman* is inapplicable to interlocutory decisions and cites *Lynk v. LaPorte Superior Court No. 2,* 789 F.2d 554 (7th Cir.1986), in support. *Lynk,* however, only implies *in dicta* that the *Rooker–Feldman* doctrine is inapplicable to interlocutory decisions. Judge Aspen's opinion for the Northern District of Illinois in *Schmitt v. Schmitt,* 165 F.Supp.2d 789 (N.D.Ill.2001), notes that two subsequent opinions by the Seventh Circuit [8]—one written by the same circuit judge who authored *Lynk v. LaPorte*—declined to resolve this issue after acknowledging that the doctrine's application to interlocutory decisions is an open question. *See id.* at 795 & n. 15. Judge Aspen nonetheless concluded that the rationale for *Rooker–Feldman* is equally applicable to both interlocutory rulings by lower state courts and interlocutory appeals therefrom, and he dismissed the § 1983 lawsuit pending before him for lack of subject matter jurisdiction.

Assuming *arguendo* that the *Cruz* line of cases is the correct one—and at least one U.S. district court judge from the Northern District of Illinois has determined that it is not—the procedural history of this particular dispute does not implicate its rationale for avoiding the *Rooker–Feldman* jurisdictional bar. In Kentucky, a grant of partial summary judgment, such as the one awarded to Farmers, may be appealed to the Court of Appeals of Kentucky. *See, e.g., Giuliani v. Guiler,* 951 S.W.2d 318, 318–19 (Ky.1997); *Conner v. George W. Whitesides Co.,* 834 S.W.2d 652, 653 (Ky.1992); *Potter v. Bruce Walters Ford Sales, Inc.,* 37 S.W.3d 210, 211 (Ky. Ct.App.2000); *Hodgin v. Allstate Ins. Co.,* 935 S.W.2d 614, 615 (Ky.Ct.App.1996). Therefore, the Kentucky Court's grant of partial summary judgment is now interlocutory only because 4th Leaf *chose* to render it so by filing its motion to alter or amend the judgment rather than appeal to a higher level of the state court system. This Court's review of the issues would thus be closer to an usurpation of the Court of Appeals of Kentucky's role than to a permissible exercise of concurrent original jurisdiction. The latter may not even be permissible, as other courts of original jurisdiction in Kentucky, and perforce a federal court, may actually be precluded from relitigating the issues under

---

**8.** *See Hoover v. Wagner,* 47 F.3d 845, 849 (7th Cir.1995); *Owens–Corning Fiberglas Corp. v. Moran,* 959 F.2d 634, 635 (7th Cir.1992); *see also Centres,* 148 F.3d at 702 n. 4.

the doctrine of collateral estoppel.[9] The rationale supporting the *Cruz* line of cases would not seem to apply to the present scenario. Rather, a concern for avoiding forum shopping by disappointed state-court litigants counsels this Court to apply the *Rooker–Feldman* jurisdictional bar. *See, e.g., Audre,* 216 B.R. at 29.

■ On a more general level, the rationale supporting the *Cruz* line of cases is weakened by the fact that it places undue weight on state preclusion law, although a few courts have entirely conflated the *Rooker–Feldman* doctrine with such principles. *See generally Harris v. New York State Dept. of Health,* 202 F.Supp.2d 143, 158–62 (S.D.N.Y.2002). As discussed previously, the *Cruz* line of cases reasons that when a state's law of judgments does not require a state court to give an interlocutory ruling from a different state court any preclusive effect, a federal court should be able to exercise concurrent original jurisdiction. However, courts have recognized vast, substantial differences between the *Rooker–Feldman* doctrine and 28 U.S.C. § 1738, which mandates federal recognition of state preclusion law, *see id.,* and the Seventh Circuit has explicitly recognized that the two legal principles are not coextensive or interchangeable, *see GASH Associates v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir.1993). For example, *res judicata* and collateral estoppel are affirmative defenses that a defendant may waive, while the *Rooker–Feldman* doctrine is an unwaivable bar to a federal court's subject matter jurisdiction that a federal court at any level may effectuate at any point during litigation. *See Garry v. Geils,*

82 F.3d 1362, 1367 n. 8 (7th Cir.1996); *Harris,* 202 F.Supp.2d at 160. Also, the *Rooker–Feldman* doctrine is a uniform principal of federal law based sections 1331, 1334, and 1257 of Title 28 of the U.S.Code, while federal recognition of state preclusion law under the Full Faith and Credit Statute involves applying the full variety of nuances contained in the states' versions of *res judicata* and collateral estoppel. *See Garry,* 82 F.3d at 1367 n. 8; *Harris,* 202 F.Supp.2d at 161–62. Finally, why the federal application of the *Rooker–Feldman* doctrine to interlocutory state court orders should vary according to the state law pursuant to which the order was entered, as it does under the *Cruz* line of cases, is unclear.

Accordingly, this Court finds that the *Rooker–Feldman* doctrine works to bar this Court from considering the merits of the dispute between Farmers and 4th Leaf.

## III.

### *CONCLUSION*

To sum up, the Court holds that although it would have at least "related to" jurisdiction, the *Rooker–Feldman* doctrine prevents the Court from considering the merits of the dispute. The Court dismisses 4th Leaf's Motion to Compel Surrender of Property for lack of subject matter jurisdiction pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(1). Accordingly, the Court need not address Farmers' abstention arguments. *See*

---

9. Congress has mandated that "judicial proceedings [of any State] ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." *See* 28 U.S.C. § 1738.

"Section 1738 imposes on the federal courts the same full faith and credit requirements imposed on the state courts by the U.S. Const. art. IV, § 1." *Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1020 n. 2 (5th Cir.1982).

**614**

*Town of Greenhorn v. Baker County,* 596 F.2d 349, 349 n. 2 (9th Cir.1979).