In re TELEGLOBE COMMUNI-
CATIONS CORPORATION,
et al., Debtors.

Doral Commerce Park, Ltd., Appellant,

v.

Teleglobe Communications
Corporation, et al.,
Appellees.

Bankruptcy No. 02–11518 (MFW).
Civ. No. 03–331–SLR.

United States District Court,
D. Delaware.

Jan. 6, 2004.

80

William F. Taylor, Jr., Katharine L. Mayer, Thomas D. Walsh, McCarter & English, LLP, Wilmington, Delaware, Robert Fracasso, Joey E. Schlosberg, Shutts & Bowen LLP, Miami, Florida, for Appellant, of counsel.

Mark D. Collins, Michael J. Merchant, Richards, Layton & Finger, P.A., Wilmington, Delaware, for Appellees.

## MEMORANDUM OPINION

ROBINSON, Chief Judge.

## I. INTRODUCTION

On May 28, 2002, debtor-appellee Teleglobe Communications Corporation and certain of its affiliated entities (collectively, the "appellees") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101. On May 29, 2002, the United States Bankruptcy Court for the District of Delaware entered an order jointly administering appellees Chapter 11 cases for procedural purposes. The appellees continue in possession of their respective properties and operate and manage their businesses as debtors in possession pursuant to §§ 1107–1108 of the Bankruptcy Code.

On July 29, 2002, the debtors filed a motion with the bankruptcy court seeking authority to reject certain executory contracts and unexpired leases pursuant to § 365 of the Bankruptcy Code. Included among the contracts and leases to be rejected was a lease between debtor-appellee Teleglobe USA Inc. ("TUSA"), as lessee, and appellant Doral Commerce Park, LTD, as lessor, dated October 30, 2000 (the "Lease"). On August 19, 2002, the bankruptcy court entered an order granting the relief requested in the motion and authorizing rejection of the Lease effective as of August 16, 2002.

On November 15, 2002, three months after the entry of the rejection order, appellant filed a motion seeking, *inter alia,* allowance of an administrative claim, pursuant to § 365(d)(3), for damages allegedly suffered as a result of TUSA's failure to remove certain property from the leased premises in accordance with paragraph 31(d) of the Lease.

On December 4, 2002, oral arguments were heard pertaining to appellant's 365(d)(23) claim. The bankruptcy court

declined to hear testimony related to potential factual issues, and instead asked the parties to focus on the potentially dispositive legal issues. On December 13, 2002, appellees and appellant each submitted supplemental legal memoranda to the bankruptcy court.

On December 20, 2002, a second hearing was held where the bankruptcy court, ruling from the bench, denied appellant's 365(d)(3) claim. The bankruptcy court stated:

> Based on the submissions, I have to agree with the debtor on this point. I think if Congress meant for section 365, if they meant "rejection" to mean termination, they would have used that term. It's clear that in other provisions of section 365 Congress did, in fact, use the term "termination" rather than "rejection." So I do not find that—or do not conclude that rejection constitutes termination of the lease. And given that the obligation of the debtors under 365(d)(3) is to pay those obligations that occur until the debtor rejects, the obligation under the lease did not occur until termination since there has not been termination during the period prior to the time that the debtor rejected. The obligation is not a 365(d)(3) obligation.

(D.I. 8 at 543) On February 23, 2003, the bankruptcy court entered an order denying appellant's alleged 365(d)(3) claim. (*Id.* at 511–13) It is from that order of the bankruptcy court that the current appeal has been brought. This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a).

On appeal to this court are two issues: (1) whether the bankruptcy court erred in denying the motion of appellant for allowance and payment of its administrative claim pursuant to 11 U.S.C. § 365(d)(3), § 503(b)(1)(A) and § 507(a)(1); and (2) whether the bankruptcy court erred in ruling that a debtor-in-possession's rejection of a nonresidential real property lease coupled with the surrender of such property did not constitute a termination of such lease. For the reasons stated below, the court will affirm the decision of the bankruptcy court and deny the appeal.

## II. FACTUAL BACKGROUND

On October 30, 2000, appellant and TUSA entered into the Lease for approximately 100,000 square feet of nonresidential real property located at 6000 N.W. 97th Avenue, Miami, Florida 33172 (the "Leased Premises").[1] The term of the Lease was twelve years and four months. Rent was based on a sliding scale, starting at $110.350.42 per month during the first eight months and increasing up to $176,643.95 per month during the last four months of the lease term. In addition to this base rent, TUSA was responsible for operating costs and sales tax. Throughout the entire term, rent was due in advance of the first day of each month.

The Leased Premises were constructed for the intended use as a commercial warehouse. TUSA reconfigured the building for use a telecommunications hub. That reconfiguration involved allegedly permanent and major structural alterations including: changes in building access; addition of equipment fixtures; installation of a new floor; installation of cables, wires, and other utility services and conduits; installation of a new gas based fire prevention system; removal of loading dock bay doors and permanent sealing of the loading dock

---

1. On December 20, 2000, the parties entered into an amendment which expanded the Leased Premises. On April 10, 2001, the parties entered into a second amendment, further expanding the Leased Premises to include a total of 120,000 square feet.

door; removal of standard electrical equipment and installation of special equipment; and installation of fuel storage tanks.

The parties understood at the time of contracting that TUSA would alter and redesign the Leased Premises. Accordingly, paragraph 31(D) of the Lease, entitled "End of Term," provides that:

On the expiration or sooner termination of the Lease Term, Tenant, at its expense, shall remove from the Premises all of Tenant's Property (except those items that Landlord shall have expressly permitted to remain, which items shall become the property of Landlord) and all Alterations that Landlord designates by notice to Tenant no later than 180 days prior to the expiration of the Term. Tenant shall also repair any damage to the Premises and the Building Project caused by the removal. Any items of Tenant's Property that shall remain in the Premises after the expiration or sooner termination of the Lease Term, may, at the option of Landlord, be deemed to have been abandoned, and in that case, those items may be retained by Landlord as its property to be disposed of by Landlord, without accountability to Tenant or any other party, in the manner Landlord shall determine, at Tenants' expense.

(D.I. 8 at 338)

On August 13, 2002, after receiving notice of appellees' intent to reject the Lease, appellant requested that all alterations to the Leased Premises be removed in accordance with paragraph 31 of the Lease. ST Tech Services and Pavarini Construction Co., Inc., were retained to provide an estimate as to the cost to restore the Leased Premises to their pre-Lease condition. That estimate concluded that the cost of restoration was approximately $3,141,581. Appellant also asserts that certain fuel tanks installed on the Leased Premises by TUSA potentially give rise to state and federal environmental obligations. Finally, appellant asserts that appellees' cancellation of alterations to the Leased Premises and termination of payments to appellees' contractor prior to receipt of a certificate of occupancy has resulted in substantial building code issues.

## III. STANDARD OF REVIEW

In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercises 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a *de novo* basis bankruptcy court opinions. *In re Hechinger*, 298 F.3d 219, 224 (3d Cir.2002); *In re Telegroup*, 281 F.3d 133, 136 (3d Cir.2002).

## IV. DISCUSSION

At issue in the present case is whether a debtor-in-possession's rejection of a nonresidential real property lease and surrender of that property constitutes a termination triggering the imposition of contractual liabilities associated with lease

termination. As the bankruptcy court resolved the issue solely on its interpretation of the Bankruptcy Code, this court applies a plenary standard of review. *See Am. Flint Glass Workers Union,* 197 F.3d at 80.

■ Appellant contends that a rejection and surrender of the Leased Premises are, in fact, a termination of the lease and that contractual liabilities expressly provided for in the event of the lease termination arise postpetition. Appellees argue that a rejection, pursuant to § 365(d), does not operate as a termination, but instead must be treated as a breach. As a consequence, damages arising from the rejection of the lease, including the nonperformance of certain obligations associated with lease termination, are not given administrative claim treatment. Because the court agrees that a rejection and surrender of a nonresidential real property lease is a breach of the lease and not a termination thereof, the bankruptcy court's decision is affirmed.

Other courts, considering similar facts, have reached the same conclusion as the bankruptcy court in the present case. *See Eastover Bank for Savings v. Austin Development Co. (In re Austin Development Co.),* 19 F.3d 1077, 1082 (5th Cir.1994) ("Rejection is treated as a breach to preserve the rights of the party whose lease with the debtor has been rejected by providing a prepetition claim; if rejection were deemed a complete, immediate termination, it is not clear what the measure of the creditor's claim would be."); *Miller v. Chateau Communities, Inc. (In re Miller),* 282 F.3d 874, 878 (6th Cir.2002) ("Rejection of debtor's lease under § 365(d)(1) constituted a breach of the lease. Any claim arising from this breach is deemed to have arisen pre-petition. § 502(g).").

As the Fifth Circuit concluded in *Austin Development,* rejection under § 365 should be viewed only as a "power to breach." *Austin Development,* 19 F.3d at 1082. To construe § 365 otherwise would result in the use of termination clauses in leases and executory contracts that circumvent the statutory intent to fairly apportion and balance the rights and priorities of creditors. The Third Circuit describes rejection as

> equivalent to a nonbankruptcy breach. 11 U.S.C. § 365(g). Rejection leaves the nonbankrupt with a claim against the estate just as would a breach in the nonbankruptcy context, and unless the nonbankrupt's claim is somehow secured, he will be a general unsecured creditor of the estate. Accordingly, if the debtor is insolvent, the nonbankrupt's claim for breach will not be paid in full. An appropriate rejection in bankruptcy will thus benefit the creditors as a whole at the expense of the nonbankrupt.

*In re Columbia Gas System Inc.,* 50 F.3d 233, 239 n. 8 (3d Cir.1995).

Appellant contends that appellees' liability associated with removing certain improvements and repairing the Leased Premises arose postpetition and gives rise to an administrative claim under the reasoning of the Third Circuit's decision in *In re Montgomery Ward Holding Corp.,* 268 F.3d 205 (3d Cir.2001). In *Montgomery Ward,* the Third Circuit considered whether certain tax obligations arising postpetition but prerejection were subject to the requirement under § 365(d)(3) that the trustee fulfill all obligations under the lease agreement. In that case, only a percentage of the tax obligation was directly attributable to the postpetition but prerejection period, nonetheless, the Third Circuit concluded that the entire amount was properly included as an administrative claim. *Id.* at 211–12. In contrast to the present case, the Third Circuit in *In re*

*Montgomery Ward* was confronted with whether a debtor should be liable for the full amount of a claim arising postpetition but prerejection. In the present case, any liability associated with removing improvements and alterations to the Leased Premises could not arise prior to rejection.[2]

Appellant also relies on a decision by this court for the proposition that a rejection of a nonresidential real property lease constitutes a termination. *See Chatlos Systems, Inc. v. Kaplan*, 147 B.R. 96 (D.Del.1992). *Chatlos*, however, raises substantially different facts and issues. In that case, the court was asked to determine the effect on a sublease, where the debtor is the sublessor and rejects the primary lease. *Id.* at 100. The court was also asked to resolve whether the debtor was liable to the lessor under the rejected primary lease to pursue an eviction action against the debtor's subtenant. The court concluded that the subtenant's interest in the property was extinguished by the debtor's rejection of the primary lease. The court, however, also concluded that following the debtor's rejection, it held no "contractual or possessory rights" in the property and, therefore, could not bring an eviction action against the subtenant. Consequently, the court rejected the notion that the debtor was liable for any administrative expenses arising post-rejection.[3] *Id.* at 101.

Finally, appellant argues that the bankruptcy court's interpretation would "lead to absurd results" as appellees would not be "obligated to comply with its return obligation" until 2013. (D.I. 7 at 29) Appellant's argument does not merit a detailed response. Like any executory obligation, appellees' rejection of the Lease leaves appellant with a claim for damages as an unsecured creditor.

The court, therefore, concludes that where a debtor-in-possession, pursuant to § 365(h), rejects a nonresidential real property lease, those claims arising from that rejection are to be given treatment as if they arose from a prepetition breach, rather than as a postpetition liability.

## V. CONCLUSION

Having concluded that appellees' rejection of its nonresidential real property lease is not a termination, the bankruptcy court's February 23, 2003 decision is affirmed and the appeal denied. An appropriate order consistent with this opinion shall issue.

---

2. Appellant contends that the Third Circuit's decision in *In re Trans World Airlines, Inc.*, 145 F.3d 124 (3d Cir.1998) likewise supports its argument that one-time lease obligations arising postpetition are subject to administrative claim status. In so arguing, appellant ignores the Third Circuit's characterization of § 1110 obligations as creating "a somewhat different scheme for the airline industry." *Id.* at 137. The Third Circuit contrasted § 1110 obligations with those arising under § 365 and § 506 which were directed toward the "fair market value of the property at the time of its use." *Id.* at 136. As § 1110 provides a unique statutory framework for the airline

industry, the court concludes that *In re Trans World Airlines* is not controlling on the present issue before the court.

3. Appellant's reliance on *Chatlos* stems from the court's characterization of the primary lease as "terminated" upon notice of the bankruptcy court's rejection order. *Chatlos*, 147 B.R. at 100. In that case, however, the distinction between termination versus breach was not at issue, therefore, the court's word choice may properly be viewed as nominal.